Alvin R. NASH, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–613.

United States Court of Veterans Appeals.

Argued May 27, 1993.

Decided Aug. 30, 1993.

Linda E. Blauhut, law student, with whom Peter H. Meyers was on the pleadings, for appellant.

Michael R. Smalls, with whom James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

NEBEKER, Chief Judge:

Appellant, Alvin R. Nash, appeals a February 13, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied entitlement to service connection for a psychiatric disorder. Upon review of the pleadings and the record on appeal, we hold that the Secretary of Veterans Affairs (Secretary) erred in failing to apply the provisions of 38 C.F.R. § 3.303(d) (1992), and neglected to provide an adequate statement of reasons and bases for the decision. Accordingly, we vacate and remand.

## I.

Appellant served in the U.S. Marine Corps from October 1969 to August 1971. While serving in Vietnam, he was convicted of assaulting a fellow serviceman and sentenced to one year in prison. R. at 146. Upon separation from service in June 1971, he underwent a psychiatric examination and was diagnosed with "aggressive personality, homicidal potential if provoked." R. at 3. In October 1973, he was denied service connection for a nervous condition by the Veterans' Administration (now Department of Veterans

Affairs) (VA) Regional Office (RO). R. at 5. He reopened his claim in 1980, submitting evidence consisting of (1) a 1973 private hospital report diagnosing him with "schizophrenia, paranoid type," R. at 20; (2) a 1974 VA hospital summary report also diagnosing him with schizophrenia, R. at 8; (3) a 1975 private hospital report diagnosing him with paranoid schizophrenia, R. at 14; (4) a 1980 lay statement from his brother to the effect that appellant was very much changed when he left the service, R. at 24; (5) a 1980 lay statement from a friend that appellant returned from Vietnam with psychological problems, and that he was first hospitalized in 1972 or 1973, R. at 25–26; (6) and a 1980 VA neuropsychiatric examination diagnosing him with "schizophrenia, paranoid type." The RO denied his claim, finding that a psychosis was not shown in service or within the applicable presumptive period. R. at 36. He appealed to the Board, and a subsequent RO decision again denied service connection. R. at 39, 119.

Appellant subsequently submitted a 1981 VA hospital summary diagnosing him with antisocial personality disorder, R. at 109; and a 1981 private hospitalization report diagnosing him with "schizophrenia, chronic undifferentiated type, currently in remission," R. at 124. The RO reopened his claim, but denied service connection. R. at 150. He appealed to the Board, and was subsequently examined by VA and diagnosed with borderline personality disorder. R. at 166. He then submitted a 1983 letter from Robert L. Leon, Chairman of the University of Texas Medical School Department of Psychiatry, who opined that appellant suffered from a borderline personality disorder incurred in service, R. at 176; and a copy of a Social Security Administration decision finding him disabled. R. at 186–87.

· In 1983, the Board considered appellant's claim and found that he suffered from a noncompensable personality disorder and denied service connection for a psychiatric disease. R. at 200–07. The Board reconsidered its decision in 1984 and found no obvious error in its previous decision.. R. at 223–28. Appellant reopened his claim in 1984, submitting a letter from a private psychiatrist, Dr.

Hunter, and a private clinical social worker, Diane Jenkins, which reads, in pertinent part, as follows:

After reviewing our charts and information received from other agencies, we believe that due to Mr. Nash's history of psychiatric services while in the Marines and consistently since that time, including [private hospitalizations], consideration should be given to the possibility that his disorder is service connected. His continued need for and response to psychotropic medication also seem to point to a diagnosis of schizophrenia.

R. at 231. The RO denied his claim, finding that the above letter did not establish a new factual basis upon which service connection could be granted. R. at 235.

Appellant reopened his claim in 1985, submitting a copy of a VA examination diagnosing him with a personality disorder: "The patient's status is questionable in that it would appear to us he does not have paranoid schizophrenia, but he is persistent in pursuing this claim in the interest of getting a disability." R. at 237. He also submitted a letter from a private physician, Dr. Mercedes de River, which reads, in part, as follows:

I have reviewed [appellant's] chart that includes hospitalizations to several state facilities and the Regional VA Hospital and [it] is apparent that his symptoms have changed since the time of discharge from the military and he meets the criteria for a diagnosis of Paranoid Schizophrenia; this diagnosis was made several times by different observers at different places.

R. at 239. Lastly, appellant submitted a copy of a 1985 VA psychiatric examination diagnosing him with schizophrenia. R. at 249. The RO considered the new evidence and found that it did not establish service connection. R. at 261–62. He appealed to the Board. R. at 263. In the meantime, appellant physically attacked and injured a VA physician, and proceedings were commenced to have appellant involuntarily committed. VA examinations given in conjunction with these proceedings diagnosed appellant with paranoid personality disorder. R. at 278, 284–85, 288–89. Despite these diagnoses, he was involuntarily committed to a

VA medical center due to "paranoid schizophrenia." R. at 269. During his commitment, progress reports show a diagnosis of personality disorder, not schizophrenia: "He has shown no evidence to suggest a diagnosis of paranoid schizophrenia." R. at 291, 296, 336.

In December of 1986, VA requested an advisory opinion based on a review of appellant's record by Dr. Fred J. Kane, Chief of Psychiatry Service, in which Dr. Kane, assuming incorrectly that VA conceded that appellant suffered from paranoid schizophrenia and wanted only to know when it began, opined that appellant's personality disorder and schizophrenia are one and the same, and that the condition began in service. R. at 343–45. The advisory opinion stated that "The Borderline Personality Disorder was first observed one month after the veteran arrived in Vietnam in June 1970. . . . The Schizophrenic Disorder was first clearly evidenced in October 1974. . . ." R. at 349. Based on this opinion, the RO denied entitlement to service connection, R. at 352, and appellant appealed. R. at 353. The Board denied service connection in 1987, finding that appellant did not suffer from a compensable psychiatric disease while in service, or within the presumptive period. R. at 368–72.

In 1989, appellant reopened his claim by submitting a 1989 letter from Dr. Hunter, stating that he had treated appellant for five years, and after reviewing appellant's medical history, believed that appellant's symptoms in service were "more or less consistent with schizophrenia." R. at 388. The RO found Dr. Hunter's statements "conjectural" and denied service connection. R. at 390. Appellant appealed to the Board and submitted a new statement from Dr. Hunter:

> I have carefully reviewed [appellant's] case and I sincerely believe that [he] has Paranoid Schizophrenia, chronic type. His military records do not show that a thorough psychiatric evaluation was performed with a full battery of psychological testing and clinical observation to definitely rule in or out the diagnosis of Paranoid Schizophrenia.

R. at 407. In October 1989, Dr. Hunter testified at an RO hearing to the effect that appellant suffered from schizophrenia in service and presently. R. at 524–61. On February 13, 1991, the Board again denied service connection for a psychiatric disorder, and appellant appealed to this Court.

## II.

■ In *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), the Court wrote,

> . . . the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review," nor in compliance with statutory requirements.

*Id.* at 57 (citation omitted); *see Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992) ("Prior to the Board's May 2, 1991, decision, this Court stated in no less than twenty published decisions and numerous memorandum decisions that 38 U.S.C.[A.] § 7104 (formerly § 4004) requires the Board to articulate 'reasons or bases' for its decisions."). Despite the *Gilbert* decision, the Board's analysis, although lengthy, fails to "account for the evidence which it finds to be persuasive or unpersuasive" and lacks "clear analysis and succinct but complete explanations." *Gilbert*, 1 Vet.App. at 57.

The Board's explanation for rejecting the numerous diagnoses of schizophrenia by state and VA medical personnel consists of the following few sentences:

> The Board acknowledges the opinions of other psychiatrists on file who related the veteran's post service reported psychosis to his active service. The Board is charged with making an independent determination on the basis of the entire evidentiary record. It is the finding of the Board that the veteran did not demonstrate [manifest] a psychiatric disability reflective of a psychosis while he was in active service, nor for one year subsequent to his service.

*Alvin R. Nash*, No. 91– ___, at 7–8 (Feb. 13, 1991). This statement is inadequate. It nei-

**4**

ther provides a basis upon which to effect judicial review, nor complies with statutory requirements. *See Gilbert,* 1 Vet.App. 57.

 The Board furthermore failed to address the provisions of 38 C.F.R. § 3.303(d). This Court has held that "[t]he BVA is not free to ignore regulations which the VA has adopted." *Schafrath v. Derwinski,* 1 Vet. App. 589, 592 (1991) *(quoting Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990)); *see also* 38 U.S.C.A. § 7104(c) (West 1991); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). The Court has also noted that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990) *(quoting Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974)). Section 3.303(d) reads, in pertinent part:

> *(d) Postservice initial diagnosis of disease.* Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection.

38 C.F.R. § 3.303(d). *See Cosman v. Principi,* 3 Vet.App. 503 (1992) (section 3.303(d) provides that, although a veteran did not suffer from a particular condition while in service, or for many years afterwards, service connection can still be established); *Godfrey v. Derwinski,* 2 Vet.App. 352 (1992) ("If evidence should sufficiently demonstrate a medical relationship between the veteran's in-service exposure to loud noise and his current disability, it would follow that the veteran incurred an injury in service."). Here, the Board concluded that since "a psychosis was not shown in service or during the one-year presumptive period subsequent to service, there exists no basis to warrant a grant of service connection for a psychosis." *Alvin R. Nash,* No. 91–___, at 7–8 (Feb. 13, 1991). Numerous medical reports, however, indicate a post-service diagnosis of schizophrenia and attribute that condition to appel-

lant's military service, thus meeting the requirements of section 3.303(d).

Accordingly, the Board decision is VACATED and the matter REMANDED for proceedings consistent with this opinion.