Citation Nr: 1542415 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 12-21 004 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for service-connected coronary artery disease prior to October 1, 2014. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

Veteran and his spouse


ATTORNEY FOR THE BOARD

S.M. Kreitlow

INTRODUCTION

The Veteran had active military service from September 1966 to September 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, which granted service connection for coronary artery disease and assigned a 10 percent disability rating, effective November 6, 2009. 

The Veteran and his spouse appeared and testified at a Board videoconference hearing held before the undersigned Veterans Law Judge in December 2013. A copy of the transcript of this hearing has been associated with the claims file.

Thereafter, in July 2014, the Board remanded the Veteran's claim for further development. In a December 2014 rating decision (issued in May 2015), a disability rating of 100 percent was awarded for the Veteran's coronary artery disease effective October 1, 2014, the date of his most recent VA examination. The RO, however, continued the denial of a disability rating higher than 10 percent prior to October 1, 2014 in a Supplemental Statement of the Case issued in December 2014. Thus, the issue remaining on appeal is entitlement to an increased rating prior to October 1, 2014. See AB v. Brown, 6 Vet. App. 3 (1992). 

The Board finds that substantial compliance with its July 2014 remand has been accomplished. Substantial compliance with a remand order, not strict compliance, is required. See Donnellan v. Shinseki, 24 Vet. App. 167 (2010); Dyment v. West, 13 Vet. App. 141 (1999). Therefore, the Board may proceed forward with adjudicating the Veteran's claim without prejudice to him. See D'Aries v. Peake, 22 Vet. App. 97 (2008). 

FINDINGS OF FACTS

1. Prior to October 1, 2014, the Veteran's coronary artery disease was not productive of workload of 7 METs or less; cardiac hypertrophy or dilatation; left ventricular dysfunction with an ejection fracture of 50 percent or less; or congestive heart failure.

2. The Veteran's paroxysmal atrial fibrillation is a separate and distinct manifestation of his coronary artery disease and is productive of least one documented episode, but not more than four, within a 12 month period. It is not permanent.


CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 10 percent for coronary artery disease were not met prior to October 1, 2014. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.104, Diagnostic Code 7005 (2015).

2. The criteria for a separate 10 percent disability rating, but no higher, for paroxysmal atrial fibrillation were met prior to October 1, 2014. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.104, Diagnostic Code 7010 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance Requirements

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100 , 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102 , 3.156(a), 3.159 and 3.326(a). This appeal arises from the Veteran's disagreement with the initial evaluation following the grant of service connection. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311(Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112(2007). No additional discussion of the duty to notify is therefore required. 

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. VA has obtained medical records; assisted the Veteran in obtaining evidence; and obtained VA medical opinions or examinations in December 2009, March 2010 and October 2014. The Veteran does not report that the condition has worsened since he was last examined, and thus a remand is not required solely due to the passage of time. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007). The examinations are adequate as they provide all information necessary to rate the disabilities at issue. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). All known and available records relevant to the issues on appeal have been obtained and associated with the Veteran's claims record; and the Veteran has not contended otherwise. 

Thus, the Board finds that VA has satisfied its duties to inform and assist the Veteran. Additional efforts to assist or notify him would serve no useful purpose. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim. 

II. Analysis

Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id. Evaluation of a service-connected disorder requires a review of the veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1 and 4.2. 

It is also necessary to evaluate the disability from the point of view of the veteran working or seeking work, 38 C.F.R. § 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the veteran's favor, 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply to the veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Veteran's claim for a higher evaluation for coronary artery disease is an original claim that was placed in appellate status by his disagreement with the initial rating award. In these circumstances, separate ratings may be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Except as otherwise provided in the rating schedule, all disabilities, including those arising from a single disease entity, are to be rated separately unless the conditions constitute the same disability or the same manifestation. See Esteban v. Brown, 6 Vet. App. 259 (1994); see also 38 C.F.R. § 4.14. The critical inquiry in making such a determination is whether any of the symptomatology is duplicative or overlapping. The appellant is entitled to a combined rating where the symptomatology is distinct and separate. Esteban, 6 Vet. App. at 262.

The Veteran has disagreed with the 10 percent disability rating assigned for his now service-connected coronary artery disease. He has argued that is coronary artery disease is worse than what it is projected. As a 100 percent disability rating was awarded effective October 1, 2014, the Board will only consider whether higher rating than 10 percent is warranted prior to that date.

The Veteran's service-connected coronary artery disease is currently evaluated under 38 C.F.R. § 4.104, Diagnostic Code 7005. Under that code, arteriosclerotic heart disease (coronary artery disease) warrants a 10 percent rating when a workload of greater than 7 METs but not greater than 10 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or continuous medication is required. A 30 percent rating is warranted when a workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. A 60 percent rating is warranted when there has been more than 1 episode of congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. 38 C.F.R. § 4.104.

Private treatment records show the Veteran underwent a cardiac catheterization in October 2005 due to angina pectoris and multiple risk factors for coronary artery disease. The results demonstrated that the Veteran had normal left ventricular angiogram with ejection fraction of 65 percent; normal left main coronary artery; normal rate iliofemoral artery; trivial left anterior descending disease; mild left circumflex disease; and mild dominant break coronary artery disease. The most significant finding on coronary arteriogram was a 30 percent stenosis in the first marginal branch of the left circumflex artery. No additional private treatment records have been provided.

On VA examinations in December 2009 and March 2010, the Veteran reported he experienced atypical chest pain in 2002 and his primary care physician referred him to a cardiologist. He underwent a left cardiac catheterization that revealed a 30 percent blockage in one coronary artery. This subtotal occlusion was not felt to be significant and was not felt to be the cause of his atypical chest pain. The chest pain resolved and has not reoccurred. He denied having a myocardial infarction, congestive heart failure or cardiac arrhythmia. He reported having no current cardiac symptoms or disabilities. 

Exercise stress test was contraindicated due to the Veteran's left hip arthrosis. Currently, METs were estimated to be 7 to 10. Examples of activities provided in establishing METs included yard work, housework, lifting greater than 50 pounds, walking 2 miles per hour on level ground, and climbing 2 to 3 flights of stairs. The December 2009 VA examiner diagnosed the veteran to have non-occlusive coronary artery disease, one vessel. He stated that there is no disability due to this condition. The March 2010 VA examiner, however, stated there was no diagnosis as significant coronary artery disease was not present.

In July 2008, the Veteran came into the VA Medical Center to establish care. At that time the Veteran reported having a history of coronary artery disease diagnosed six years ago, but that he never had any trouble. The only medication he was taking at that time was a baby aspirin a day. The assessment was noncritical coronary artery disease. 

Subsequent VA treatment records showed no complaints until December 2010 at which time the Veteran complained of nonspecific chest pain and shortness of breath with rest. His primary care physician ordered a nuclear stress test. On cardiology consultation in February 2011, the Veteran reported a one-year history of recurrent chest pain. He described having stabbing chest pains and shortness of breath while walking and climbing steps and occasional dull pain with activity in center of chest. This was relieved with rest. It was noted that nuclear stress test on January 3, 2011 was abnormal. Left ventricular ejection fraction, however, was 69 percent. A left heart catheterization was recommended, which was performed on February 16, 2011. Findings demonstrated very short left main artery without disease; moderate sized left anterior descending artery with minimal luminal irregularities; nondominant left circumflex coronary artery without any significant disease; mild 20 percent disease in the proximal right coronary artery; normal left ventricular systolic function with ejection fraction of 55 percent; no significant mitral regurgitation or aortic stenosis; and mildly elevated left ventricular end diastolic pressure of 21 mmHg. The cardiologist's impression was that the catheterization showed no significant obstructive coronary artery disease and normal left ventricular ejection fracture. His recommendation was to continue risk factor modification efforts through Primary Care.

Subsequent VA treatment records failed to show any further complaints of chest pain through 2012. At his December 2013 board hearing, however, the Veteran testified that his condition had worsened earlier that year leading him to be hospitalized in July at the VA Medical Center for atrial fibrillation and that he was now on medication for this. As the VA treatment records for this hospitalization were not of record and the Veteran testified his condition had worsened since his last examination, the Board remanded the Veteran's claim in July 2014.

VA treatment records from the July 2013 hospitalization show that a Regadenoson Cardiolite stress test conducted on July 1st was normal as the echocardiogram shows no abnormalities suggestive of ischemia with Regadenoson pharmacologic stress. A July 2nd cardiology note indicates that the Veteran's electrocardiogram was suggestive of atrial fibrillation. Anticoagulation therapy was recommended. It was noted in a Medicine Physician Progress Note that the echocardiogram showed an ejection fracture of 55 to 60 percent. The assessment was paroxysmal atrial fibrillation with rapid ventricular response and chest pain, resolved, most likely secondary to atrial fibrillation as it coincided with palpitations. It was noted he had normal stress test and echocardiogram during this admission. The Veteran was started on Coumadin therapy and a low dose of Metoprolol was added as well. 

In September 2013, the Veteran reported to his primary care physician having an episode of chest pain while driving to pick up his wife from work. In October 2013, the Veteran underwent Cardiology consultation again for continued chest pain and paroxysmal atrial fibrillation. The assessment was chest pain with known coronary artery disease with recent normal nuclear stress test. It was noted that, although his chest pain has some typical features, he has had two essentially normal catheterizations and a recent normal nuclear study for the same pain. It was recommended that sources of noncardiac pain should be investigated under the direction of his primary care physician. 

In December 2013, the Veteran reported to the emergency room with complaints of chest pain described as substernal 6/10 pressure with some radiation to his neck and left elbow. The assessment was atypical chest pain at rest with similar episodes in July and recent cardiology evaluation in September with normal myocardial perfusion study on July 1st and ejection fraction of 55 to 60 percent; and history of atrial fibrillation with subtherapeutic INR and regular heart rate and rhythm on exam. After evaluation, it was thought that the Veteran's chest pain was not of cardiac origin as his chest pains abated after an hour and his troponin and electrocardiogram were negative. 

In March 2014, the Veteran again reported to the emergency room with complaints of chest pain. This was initially thought to be secondary to gastroesophageal reflux disease (GERD) as his discomfort resolved immediately after he was given a gastrointestinal cocktail. Nevertheless the Veteran was held for observation and was transferred to a private hospital as a bed was not available at VA. The non-VA care coordinator's notes thereafter indicate that his Troponins were negative and an echocardiogram was unremarkable. Additional work-up was wanted, but the Veteran did not have it due to claustrophobia. He was discharged from the private hospital on March 27th. On March 31st, the Veteran was seen by his VA primary care physician and reported that he was told his chest pain was due to his atrial fibrillation and that he did not have a heart attack. She indicated that the principle diagnoses from his private hospital admission were symptomatic arrhythmia; coronary artery disease, non-obstructive with chest pain; and paroxysmal atrial fibrillation. 

In addition, the VA treatment records document the Veteran has shortness of breath, with and without exertion. It is unclear from these records, however, whether this is related to the Veteran's coronary artery disease or just general deconditioning, but is probably both according to the October 2014 VA examiner. 

The Board finds that a disability rating higher than 10 percent under Diagnostic Code 7005 for the Veteran's coronary artery disease prior to October 1, 2014 is not warranted as the evidence fails to demonstrate that his workload was 7 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope. Furthermore there is no evidence that the Veteran has cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram or X-ray. The VA examinations showed no current disability caused by his coronary artery disease and the VA treatment records showed complaints of only one episode of chest pain in December 2010 until his hospitalization in July 2013. VA treatment records show minimal to no symptoms of coronary artery disease at least until July 2013, although it appears that most of his symptoms thereafter were related to his atrial fibrillation. Furthermore, his left ventricular ejection fracture has not been measured at 50 percent or below, which would warrant a disability rating of at least 60 percent under Diagnostic Code 7005. Based on the evidence, therefore, the Board finds that the preponderance of the evidence is against granting a disability rating higher than 10 percent for the Veteran's coronary artery disease.

The Board does find, however, that a separate disability rating is warranted for the Veteran's paroxysmal atrial fibrillation. The Veteran underwent VA examination in October 2014. The VA examiner stated that the Veteran's paroxysmal atrial fibrillation is related to his coronary artery disease. Consequently, the Board finds that it is a separate aspect of the Veteran's already service-connected coronary artery disease. Diagnostic Code 7010 provides for a 10 percent rating for permanent atrial fibrillation (lone atrial fibrillation) or; one to four episodes per year of paroxysmal atrial fibrillation or other supraventricular tachycardia documented by electrocardiogram or Holter monitor. A 30 percent rating is warranted if there is paroxysmal atrial fibrillation or other supraventricular tachycardia, with more than four episodes per year documented by electrocardiogram or Holter monitor. Since the rating criteria for evaluating paroxysmal atrial fibrillation is completely different from that used to evaluated coronary artery disease, the Board finds that giving the Veteran's paroxysmal atrial fibrillation a separate rating does not constitute impermissible pyramiding. 

After considering all the evidence, the Board finds that the evidence demonstrates the Veteran has had at least one episode of paroxysmal atrial fibrillation documented by electrocardiogram, specifically in July 2013. In addition, the discharge diagnoses in March 2014 included symptomatic arrhythmia. The records of that private hospitalization have not been associated with the Veteran's claims file; however, the Board will give the Veteran the benefit of the doubt given the diagnosis. The Board finds, however, that the evidence does not demonstrate by electrocardiogram or Holter monitor that the Veteran has had episodes of paroxysmal atrial fibrillation of more than four in a year. Consequently, the Board finds that the preponderance of the evidence is in favor of granting a separate 10 percent disability rating, but no higher, for the Veteran's paroxysmal atrial fibrillation. 

The Board has also considered whether referral for consideration of an extraschedular rating is warranted for the Veteran's coronary artery disease and paroxysmal atrial fibrillation. An extraschedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization such that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). The rating criteria for coronary artery disease and supraventricular tachycardia focus on compensating a veteran based upon the effect on workload (i.e., functioning) and frequency of episodes, respectively. The rating criteria clearly contemplate the symptoms which accompany the Veteran's coronary artery disease and paroxysmal atrial fibrillation, including shortness of breath, irregular heartbeat, and chest pain (angina) as reported by the Veteran throughout this appeal. To the extent that the Veteran has complained of these symptoms, they are specifically contemplated by the rating criteria. Thus, the Veteran's disability picture is contemplated by the rating schedule, and the assigned schedular evaluations are, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, (2008). Consequently, the Board finds that the preponderance of the evidence is against referral for extraschedular consideration.

The Veteran is also service connected for diabetes mellitus and related complications, but the record shows that he is properly compensated all of his service-connected disabilities. The evidence does not rise to an equipoise level as to a collective effect of the other service-connected disabilities, acting with the cardiac disability the rating of which is on appeal, makes his disability picture an unusual or exceptional one. Again, referral for extraschedular consideration is not warranted. See Johnson v. Shinseki, 762 F.3d 1362 (Fed. Cir. 2014). 

After considering all the evidence of record, the Board finds that the preponderance of the evidence is against finding that a disability rating higher than 10 percent is warranted for the Veteran's coronary artery disease prior to October 1, 2014. The preponderance of the evidence is, however, in favor of awarding a separate 10 percent disability rating, but no higher, for the Veteran's paroxysmal atrial fibrillation. The Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

ORDER

Entitlement to an initial disability rating in excess of 10 percent for service-connected coronary artery disease prior to October 1, 2014, is denied.

Entitlement to a separate disability rating of 10 percent for paroxysmal atrial fibrillation is granted, subject to controlling regulations governing the payment of monetary benefits.




____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs