http://www.va.gov/vetapp16/Files4/1634328.txt

Citation Nr: 1634328 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 12-31 306 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California

THE ISSUE

Entitlement to an initial disability rating in excess of 30 percent for service-connected posttraumatic stress disorder (PTSD) with depressive disorder prior to April 16, 2014, and in excess of 50 percent thereafter.

REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

Sara Kravitz, Associate Counsel

INTRODUCTION

The Veteran served on active duty from August 1966 to August 1968. 

This matter comes before the Board of Veterans Appeals (Board) on appeal from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in March 2011, in which the Veteran was granted service connection for PTSD. Over the course of the appeal, the Veteran's psychiatric disorder was recharacterized as PTSD with depressive disorder in a May 2014 rating decision after the Veteran was found to have a separate diagnosis of depressive disorder, but with symptoms that the April 2014 VA examiner said were not able to be distinguished from PTSD. The Veteran's PTSD with depressive disorder rating was also increased to 50 percent from April 16, 2014. Regardless of the RO's actions, the issue remains before the Board because the increased rating was not a complete grant of the maximum benefits available. See AB v. Brown, 6 Vet. App. 3 (1993).

The Board has reviewed the documents in the electronic claims files in rendering this decision.

FINDINGS OF FACT

Throughout the appeal period he Veteran's PTSD with depressive disorder has been manifested by symptoms such as flattened affect, anxiety, depression, irritability, poor sleep and nightmares, disturbances in mood or motivation, and difficulty establishing and maintaining relationships. While the Veteran had deficiencies in mood, he did not have deficiencies in work, judgement, or thinking characteristic of occupational and social impairment with deficiencies in most areas. 

CONCLUSIONS OF LAW

1. The criteria for an evaluation of 50 percent, but no higher, for PTSD with depressive disorder are met throughout the appeal period. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2015).

2. The criteria for an initial evaluation in excess of 50 percent for PTSD with depressive disorder are not met at any point during the appeal period. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Stegall Considerations

In February 2014, the Board remanded this claim in part based on outstanding VA medical center (VAMC) treatment records and to afford the Veteran a new psychiatric examination. The outstanding records were obtained and the Veteran was afforded a VA examination. Thus, there is substantial compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). 

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits pursuant to 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). In June 2008, the agency of original jurisdiction (AOJ) sent a letter to the Veteran providing the notice required for the initial claim of service connection for PTSD. Service connection was subsequently granted in March 2011 and the Veteran appealed the initial rating assigned. In cases such as this, where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490 (2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 
The Veteran bears the burden of demonstrating any prejudice from defective (or nonexistent) notice with respect to the downstream elements. Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). That burden has not been met in this case. Neither the Veteran nor his representative alleges such prejudice in this case. Therefore, no further notice is needed. 

VA has done everything reasonably possible to assist the Veteran with respect to his claims for benefits in accordance with 38 U.S.C.A. § 5103A and 38 C.F.R. 
§ 3.159(c). Service treatment records and private treatment records have been associated with the claims file. 

The Veteran was medically evaluated in conjunction with his claim in February 2011 and April 2014. The VA examiners recorded the Veteran's current complaints, conducted appropriate evaluations of the Veteran, and provided sufficient information to allow the Board to render an informed decision on the Veteran's current levels of disability at different points in time. Francisco v. Brown, 7 Vet. App. 55 (1994). The Board finds the examinations of record to be adequate for purposes of rendering a decision in the instant appeal. See 38 CF.R. 
§ 4.2 (2015); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2015); Barr, 21 Vet. App. at 312.

Also, the Board observes that all appropriate due process concerns have been satisfied. See 38 C.F.R. § 3.103 (2015). The Veteran declined to testify before a Veterans Law Judge. Therefore the duties to notify and assist have been met. 

Analysis

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. See 38 C.F.R. § 4.126 (2015). 

The Veteran's PTSD with depressive disorder is currently rated under 38 C.F.R. 
§ 4.130, Diagnostic Code (DC) 9411. 

A 30 percent disability rating is in order when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent rating is warranted when there is occupational and social impairment with deficiencies in most areas such as work, school, family relations, judgment, thinking, or mood due to symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and an inability to establish and maintain effective relationships. Id.

A 100 percent evaluation is warranted where there is evidence of total occupational and social impairment due to gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living; disorientation to time or place; memory loss for names of close relatives, own occupation or own name. Id.

The "such symptoms as" language of the diagnostic codes for mental disorders in 38 C.F.R. § 4.130 means "for example" and does not represent an exhaustive list of symptoms that must be found before granting the rating of that category. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). However, as the Court also pointed out in that case, "[w]ithout those examples, differentiating a 30% evaluation from a 50% evaluation would be extremely ambiguous." Id. The Court went on to state that the list of examples "provides guidance as to the severity of symptoms contemplated for each rating." Id. Accordingly, while each of the examples needs not be proven in any one case, the particular symptoms must be analyzed in light of those given examples. Put another way, the severity represented by those examples may not be ignored.

The Federal Circuit has indicated that when addressing the issue of a veteran's entitlement to a disability rating under 38 C.F.R. § 4.130, an explicit finding as to how most of the enumerated areas are affected may be important, if not absolutely required. See Vazquez-Claudio v. Shinseki, 2012-7114 (Fed. Cir. Apr. 8, 2013). 

Global Assessment of Functioning (GAF) scores are a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." See Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing the American Psychiatric Association 's DIAGNOSTIC AND STATISTICAL MANUAL FOR MENTAL DISORDERS, Fourth Edition (DSM- IV), p. 32). An examiner's classification of the level of psychiatric impairment at the moment of examination, by words or by a GAF score, is to be considered, but it is not determinative of the percentage VA disability rating to be assigned; the percentage evaluation is to be based on all the evidence that bears on occupational and social impairment. See 38 C.F.R. § 4.126 (2015); VAOPGCPREC 10-95 (Mar. 1995); 60 Fed. Reg. 43186 (1995). 

In this case, the Veteran essentially contends that his PTSD with depression is more disabling than contemplated by the current disability evaluation.

From May 2008 to August 2008, the Veteran was seen at the Portland Vet Center. In a June 2008 treatment report his affect was flat and almost tearful at times. He had no suicidal or homicidal ideation. In a July 2008 session he was tearful when discussing traumatic events. He had no suicidal or homicidal ideation. In his August 2008 session his mood was tense and somewhat irritable; he felt guilt about his experience in service. He had no suicidal or homicidal ideation.

VAMC records show that the Veteran had a positive PTSD screen but a negative depression screen in July 2009, May 2010 and January 2011, due to having nightmares, being easily startled, engaging in avoidance, and feeling numb or detached from surroundings. He was not at risk for suicide. 

In November 2010, the Veteran's wife submitted a lay statement that the Veteran had nightmares about Vietnam and would hit or kick her in his sleep and cried, and that other times he was angry, or distant and detached for several days. 

In February 2011, the Veteran was afforded a VA examination to determine the severity of his PTSD. The Veteran was not currently receiving psychiatric treatment. He was never given medical treatment for his psychiatric disorders or hospitalized. He complained of anxiety, tension, irritability, and quick temper, as well as jumpiness and easy startling. He also complained of hyper-alertness and recurrent and intrusive dreams, as well as insomnia, but denied flashbacks. He complained of heightened anxiety when he encountered reminders of the combat zone, but denied panic attacks. He complained of depression with occasional crying and feelings his life was not worth living, and rare suicidal ideation, but with no plain or intent to harm himself. The examiner noted the Veteran's memory and concentration were within normal limits, appetite and weight were stable, and energy level was stable. Socially, he leaned towards solitude. He denied auditory visual hallucinations. He also denied danger to himself or others. The examiner noted that the Veteran had a clean work record and had never been fired for cause or bad attitude. He lived with his wife of 25 years. The Veteran did not go to church or social clubs and got along well with family and friends, and went camping, walking, hiking, and fishing. He exhibited appropriate grooming. The examiner noted that the Veteran exhibited a somewhat anxious and dysphoric mood, with occasional smiling and no laughing or weeping. His focus, eye contact and spontaneity were within normal limits. He did not exhibit panic attacks or obsessive rituals. His though content was mildly anxious, but he had no thought disorder. The Veteran forgot one object on his memory test but otherwise answered questions promptly and appropriately. He denied psychotic symptoms. He was oriented to time place, and person. Judgement and insight were intact. His GAF score was a 65. Overall, the examiner opined that the Veteran had mild to moderate mental symptoms without significant impairment in social or occupational functioning. 

In a February 2012 lay statement, the Veteran stated that he tried to control his crying and that is why he did not cry at his VA examination, but that he had been fighting tears and the clinician had not noticed. He also stated he did not have any close male friends. He also stated he had frequent anxiety and sleepless nights. 

In September 2012, the Veteran submitted his VA Form 9 Substantive Appeal and on it he stated that he had horrible dreams, depression, and anxiousness. 

January, May, and November 2012 VA treatment records showed a positive PTSD screen, but no suicide risk. Depression screens were negative. 

May 2013 VA treatment records noted the Veteran was having "mild and manageable" PTSD symptoms including nightmares and avoidance, and was not at risk for suicide. 

In April 2014, the Veteran was afforded a VA psychiatric examination. The examiner diagnosed the Veteran with PTSD with depressive disorder, although he noted the Veteran's depression screenings of the past four years had been negative for complaints of depression symptoms. The examiner noted it was not possible to differentiate which symptoms were attributable to which diagnosis because the conditions were comorbid and causally related to each other, thus the symptoms overlap. The examiner found that a mental condition had been formally diagnosed but symptoms were not severe enough to interfere with occupational and social functioning or to require continuous medication. The examiner noted symptoms of depressed mood; anxiety, disturbances in motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. The examiner noted the Veteran was alert and oriented and his mood was euthymic. His affect was appropriate and expressive and receptive communication was within normal limits. His thought process was linear and goal directed and he denied suicidal and homicidal ideation. The examiner noted the Veteran's reports of depressive symptoms at the exam were not consistent with the clinical records, where he denied symptoms of depression for the past four years. His GAF score was a 60, which the examiner noted reflected moderate symptoms and his reported mild to moderate discomfort in social settings. 

Throughout the appeal period, the Veteran has displayed symptoms including flattened affect; moods ranging from tense, irritable and angry, and dysphoric to distant and detached; nightmares that also affected his wife; a lack of close friends; hypervigilance and startling and insomnia; and anxiety and depression. These symptoms are hallmarks of a 50 percent rating, and many are specifically listed in the Diagnostic Code as examples, including his disturbances of motivation and mood, and difficulty in establishing and maintaining effective social relationships. 

However, during that time period the Veteran also was engaged in relationships with other close family, as well as engaging hobbies. He was also alert to time, space and person. His judgment, thought process, and insight were noted to be intact by every clinician who interviewed him, with long term memory intact and only one mistake on his memory test. He displayed no delusions or hallucinations. He also had no problems when had been working. Finally, while the Veteran mentioned thoughts that life was not worth living at his February 2011 VA examination, he did not mention them at any other point and specifically stated during that he had no plan or intent to harm himself, therefore, these statements are not reflective of his overall disability picture. 

The Veteran also demonstrated that he did not have total occupational or social impairment. In fact, the Veteran has been shown to have normal communication, his intuition has consistently been judged as good, and his thought process consistently described as goal-directed, oriented, and linear, by his examiners. He has also demonstrated the ability to perform activities of daily living, grooming, and self-care. Thus, in the absence of total social impairment due to his symptoms, a 100 percent rating under the General Rating Formula cannot be assigned. 

Therefore, overall while he had deficiencies in mood, the Veteran did not display impairment when it came to work, judgement or thinking and thought process. Thus a rating in excess of 50 percent is not warranted at any point during the appeal period.

In reaching these determinations, the Board has considered whether, under Fenderson a higher rating might be warranted for any period of time during the pendency of this appeal. See Fenderson, supra. But there is no evidence that the Veteran's PTSD with depressive disorder warranted an evaluation in excess of 50 percent for the above reasons. 

Extraschedular Consideration of PTSD with Depressive Disorder

The Board has also considered whether the Veteran's claim should be referred for an extraschedular rating. See 38 C.F.R. § 3.321(b) (2015); Thun v. Peake, 22 Vet. App. 111, 114 (2008). Because the ratings provided under the VA Schedule for Rating Disabilities are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstances, but nevertheless would still be adequate to address the average impairment in earning capacity caused by the disability. Id. However, in exceptional situations where the rating is inadequate, it may be appropriate to refer the case for extraschedular consideration. Id. The governing norm in these exceptional cases is a finding that the disability at issue presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2015). 

The Board finds that referral for extraschedular consideration is not warranted. The Veteran's service-connected PTSD with depressive disorder is contemplated and reasonably described by the rating criteria under Diagnostic Code 9411. See 38 C.F.R. § 4.130 (2015). In this regard, the Veteran's psychiatric disorder has specifically been manifested by anxiety, depression, sleep disturbance, and disturbances in mood and motivation, as well as difficulty establishing and maintaining social relationships. As shown above, this type of disability picture is specifically addressed in the rating criteria set forth in Diagnostic Code 9411. See id. Accordingly, the Board finds that a comparison of the Veteran's PTSD with the schedular criteria does not show that it presents "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b) (2015). Consequently, the Board finds that the available schedular evaluations are adequate to rate this disability. As such, in the absence of this threshold finding, there is no need to consider whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the claimant's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). 

Next, the Board notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). In this case, the Veteran has been granted service connection for tinnitus and bilateral hearing loss. The medical and treatment records do not reflect that the Veteran's service-connected psychiatric disorder results in further disability when looked at in combination with the above. Therefore, the Board finds that the schedular criteria adequately describe the Veteran's PTSD with depressive disorder. 38 C.F.R. § 4.130, Diagnostic Code 9411. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

Finally, the Board is cognizant of the ruling of the Court in Rice v. Shinseki, 22 Vet. App. 447 (2009). In Rice, the Court held that a claim for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. In this case, the Veteran has not argued and the record does not otherwise reflect that his service-connected PTSD with depression renders him unable to obtain or retain substantially gainful employment since his records note that he owned a business with his wife, from which he retired. Accordingly, the Board concludes that a claim for TDIU has not been raised. 

ORDER

Entitlement to an initial disability rating of 50 percent for service-connected posttraumatic stress disorder (PTSD) with depressive disorder, but no higher, throughout the whole appeal period is granted, subject to the criteria applicable to the payment of monetary benefits.

____________________________________________
K.J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs