Citation Nr: 1607917 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 04-27 798 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona


THE ISSUES

1. Entitlement to service connection for left ear Meniere's disease with hearing, loss and tinnitus.

2. Entitlement to service connection for a chronic disability involving the cervical
spine, to include cervical muscular headaches, to include as secondary to service-connected low back disability.


ATTORNEY FOR THE BOARD

K. Fitch, Counsel



INTRODUCTION

The Veteran had active service from August 1967 to May 1971.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 1998 rating decision of the VA Regional Office (RO) in Phoenix, Arizona which denied entitlement to the benefits on appeal. The Veteran filed a notice of disagreement dated in January 1999 and the RO issued a statement of the case in March 1999. The Veteran filed his substantive appeal in May 1999. Subsequently, the RO again adjudicated the claims in an August 2000 supplemental statement of the case, an August 2002 rating decision, and in a May 2004 statement of the case. 

In a July 2009 decision, the Board denied the Veteran's claim of entitlement to service connection for Meniere' s disease with hearing loss and tinnitus, and remanded the Veteran's cervical spine claim for further development. The RO also remanded a claim of individual unemployability for consideration by the RO. 

The Veteran appealed the July 2009 Board decision with respect to the Meniere's claim to the United States Court of Appeals for Veterans Claims (Court). By an Order dated June 2010, the Court granted a Joint Motion to remand with respect to the Meniere's claim and remanded the matter for consideration consistent with the Order. 

In June 2010, the RO granted entitlement to TDIU. In September 2010, the Board remanded the Meniere's claim for additional development. In July 2013, the RO granted service connection for right ear hearing loss and tinnitus. The record does not show that the Veteran has appealed any part of those grants; accordingly, the issues are no longer before the Board. 

The Veteran was previously represented by a private attorney. The attorney withdrew from representation prior to certification to the Board in November 2012. 


FINDINGS OF FACT

1. The evidence of record demonstrates that left ear Meniere's disease with hearing loss and tinnitus did not have its onset in service or within one year of service, and was not caused or aggravated by active military service. 

2. The evidence of record demonstrates that a cervical spine disability, to include degenerative disc disease and degenerative changes with significant anterior paravertebral ossification and residual muscular tension headaches, did not have its onset in service or within one year of service, and was not caused or aggravated by active military service or a service-connected disability. 


CONCLUSIONS OF LAW

1. The criteria for an award of service connection for left ear Meniere's disease with hearing loss and tinnitus have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.159, 3.303, 3.307, 3.309 (2015).

2. The criteria for an award of service connection for a cervical spine disability, to include degenerative disc disease and degenerative changes with significant anterior paravertebral ossification and residual muscular tension headaches, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.159, 3.303, 3.307, 3.309, 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VCAA

In letters dated in June 2001, June 2005, March 2006, June 2010, and July 2011, the RO satisfied its duty to notify the Veteran under 38 U.S.C.A. § 5103(a) (West 2014) and 38 C.F.R. § 3.159(b) (2015). The RO notified the Veteran of: information and evidence necessary to substantiate the claims at issue; information and evidence that VA would seek to provide; and information and evidence that the he was expected to provide. The Veteran was informed of the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The Board acknowledges that, in the present case, complete notice was not issued prior to the adverse determination on appeal. However, fully compliant notice was later issued and the claims were thereafter readjudicated, most recently in a 2013 supplemental statement of the case. Accordingly, any timing deficiency has here been appropriately cured. Mayfield, 444 F.3d 1328 (Fed. Cir. 2006). 

Next, the duty to assist contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2015). VA has done everything reasonably possible to assist the Veteran with respect to his claims for benefits in accordance with 38 U.S.C.A. § 5103A (West 2014) and 38 C.F.R. § 3.159(c) (2015). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was also afforded multiple VA examinations that, taken together, are fully adequate to decide the claims. Regarding the auditory disorders, the 2006 and 2011 VA examiners reviewed the claims file. Regarding the cervical spine disorder, the 2009 and 2012 VA examiners noted review of the claims file. Additionally, the examiners explained the basis for the opinions provided and considered the relevant evidence of record, including the Veteran's lay statements and submissions. 

Additionally, the issues in this case were remanded in July 2009 and September 2010, respectively. The July 2009 Board remand requested that the Veteran be provided a VA examination regarding service connection secondary to the service-connected lumbar spine disability. The September 2010 Board remand requested an additional VA examination regarding whether the Veteran's Meniere's disease with hearing loss and tinnitus was secondary to noise exposure or a fall the Veteran had in service. The remand also requested that the RO contact the Veteran for any additional records. Examinations responsive to the remand requests were accomplished in September 2009, June 2011, and October 2012. Furthermore, the RO sent the Veteran an April 2011 letter requesting information regarding all medical records. As such, the Board finds that there has been substantial compliance with the terms of the remand directives. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

II. Service connection

Service connection may be established for disability resulting from injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). The term "chronic disease," whether as manifest during service or manifest to a compensable degree within a presumptive window following service, applies only to those chronic diseases listed in 38 C.F.R. 
§ 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). With respect to the current appeal, this list includes arthritis, hearing loss, and tinnitus. See 38 C.F.R. § 3.309(a). 

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a). However, in order for the presumption to apply, the evidence must indicate that the disability became manifest to a compensable degree within one year of separation from service. 38 C.F.R. § 3.307.

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). In order to establish entitlement to service connection for a disability, the Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). 

In addition, service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995).

Lay testimony is competent to establish a diagnosis where the layperson is competent to identify the medical condition, is reporting a contemporaneous medical diagnosis, or describes symptoms that support a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, reasonable doubt will be resolved in each such issue in favor of the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. 
§ 3.102. An appellant need only demonstrate that there is an approximate balance of positive and negative evidence in order to prevail. To deny a claim on its merits, the evidence must preponderate against the claim. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); Alemany v. Brown, 9 Vet. App. 518 (1996).
 
Meniere's Syndrome, hearing loss, and tinnitus

Service treatment records are silent for any complaints, treatment, or diagnoses of Meniere's syndrome, hearing loss, and tinnitus. The service discharge examination denied any such findings. As noted, however, the Veteran had a fall in service and is service-connected for a low back disability. 

In March 2001, the Veteran's ex-spouse submitted a statement that indicated that the Veteran began having equilibrium problems, headaches, dizzy spells and problems with his hearing in both ears in 1973. He would also have spells of nausea and had a lot of time off from work due to these problems. She indicated that the Veteran went to see a private ear doctor and was diagnosed with Meniere's in the later part of 1973. 

A June 1998 examination was conducted and the Veteran reported that in the early 1970s, he had problems with balance and was diagnosed with Meniere's syndrome. At that time he was not having significant trouble with his balance or with dizziness. The Veteran reported that he heard a screaming type sound most noticeable in quiet. He stated that it was constant in the right ear and periodic in the left ear and the sound began approximately 20 years ago. Testing was performed, but it was considered unreliable. A June 1998 general medical examination found that the Veteran had Meniere's disease, in remission. No nexus opinions were offered.

An August 1998 examination was conducted. The Veteran reported that due to progressive Meniere's disease, his left ear was nearly dead. The Veteran also reported bilateral constant tinnitus, which had been unchanged over the last several years. After examination, the examiner indicated that it was likely that the Veteran had Meniere's disease. The severity of the disease, however, was determined to be unclear. No nexus opinion was provided.

In a May 2001 statement, the Veteran's chiropractor opined that it was his professional opinion, based on the medical records and x-rays that were reviewed that are on file, the Veteran had a documented musculoskeletal condition with direct etiology to the fall on board the USS Stribling in July of 1969. The chiropractor noted that additional symptomatology noted after the auto accident in 1995 were clearly superimposed onto his previous pathological conditions that existed from the fall in 1969 while in the Navy. The chiropractor then recommended approval of the Veteran's claims for service connection for Meniere's syndrome, cervical osteoarthritis and degenerative joint disorder because they were incurred while in active duty in July of 1969 while on board the USS Stribling.

An April 2004 VA audiological examination was conducted. The examiner opined that the Veteran's Meniere's disease was unrelated to his service, but that the Veteran's hearing loss and tinnitus could be related to his service. The examiner stated that there were no precipitating factors in the military that would have given rise to his Meniere's disease and the examiner was not aware of any evidence showing that Meniere's disease is a result of noise exposure. However, tinnitus and hearing loss in his right ear could certainly be due to exposure while at sea. An April 2004 VA ear diseases examination reported contained the opinion that the Veteran's hearing loss and tinnitus were related to his Meniere's disease. 

In an August 2006 VA examination, testing showed the presence of bilateral hearing loss. The audiologist opined that the hearing loss was likely secondary to Meniere's disease. In additional examination in August 2006, the examiner opined that Meniere's disease was not a condition related to either sea duty or exposure to noise. 

In October 2006, the Director of Administrative Medicine at the Southern Arizona VA Health Care System reviewed the entire claims file and opined that the Veteran's current hearing loss and tinnitus were symptoms of his Meniere's disease. The examiner also opined that it was not at least as likely as not that the Meniere's disease was related to noise exposure at sea. The examiner indicated that he reviewed the claims file, to include internet articles submitted by the Veteran. The examiner determined that authoritative references did not indicate that noise exposure was the cause of Meniere's disease to be able to state that there was at least a 50/50 likelihood.

The Veteran was afforded a VA examination dated in June 2011. The Veteran's claims file was reviewed in connection with the examination and report. The Veteran reported a significant fall onboard ship sometime about 1969 where he reportedly fell through a hatch and onto the deck below. He did not recall if he hit his head or not. The Veteran reported the first known onset of what was diagnosed as Meniere's disease about 1971 or 1972 while no longer in the Navy, but rather working in the private sector. His description of the symptoms experienced at the time included left ear hearing loss, vertigo and roaring low pitched tinnitus. The Veteran reported he had been suffering from these symptoms ever since. After examination, the diagnosis was sensorineural hearing loss in the right ear, and Meniere's disease in the left ear. The examiner noted that the Veteran presented with the classical signs of Meniere's disease, including episodic vertigo, fluctuating but later decreasing single sided hearing loss along with loud, roaring tinnitus in the ear affected, thus linking all three disorders. The examiner opined that it was less likely than not that the Veteran's diagnosis of Meniere's disease was related to his military service, noting that by the Veteran's own accounts, the first onset of any of the Meniere's symptoms came after his military discharge, and there is no known evidence to suggest that acoustic trauma (noise exposure) or a fall, as the Veteran reported, can cause Meniere's disease. Meniere's disease was noted to be an inner ear disorder believed to be caused by the over production or under absorption of an inner ear fluid within the organ of balance. The examiner then stated that the Veteran did have hearing loss in the right ear as well as right ear tinnitus and that it was more likely than not that this right ear hearing loss with tinnitus was not associated with the left ear and its Meniere's disease. 

The Board finds that service connection for Meniere's disease with hearing loss and tinnitus is not warranted. First, the evidence of record demonstrates current disabilities for VA purposes. See 38 C.F.R. § 3.303(a); Shedden, 381 F.3d at 1167. The various medical records have diagnosed Meniere's disease, hearing loss, and tinnitus.

Second, then, is the issue of in-service incurrence or an event, injury, or disease during service. Here, the evidence demonstrates that there was noise exposure during service and a fall during service, as the Veteran has asserted. These are conceded. However, STRs are silent regarding any Meniere's syndrome, hearing loss, or tinnitus. Additionally, the Veteran has not reported in-service onset; rather, he asserts that his symptoms began in approximately 1971, after service discharge. Thus, the evidence does not support any symptoms during service. But service connection may be warranted where there is no evidence of the disability during service, where the evidence the disorder is otherwise related to service. See 38 C.F.R. § 3.303(d). Thus, because the evidence does corroborate noise exposure and a fall during service with current disorders, nexus must be considered.

Third, the issue is whether there is a relationship between the current disability and active service. First, the Board notes that hearing loss and tinnitus were not diagnosed within one year of service discharge. Even the Veteran has not asserted that his tinnitus began within one year. The Veteran and his wife allege the presence of symptoms in 1973, approximately two years after service discharge. Second, upon assessment of the multiple medical opinions of record, the Board finds the most probative evidence of record indicates that the disabilities are not related to service. The June 2001 private chiropractor opinion is not probative as it does not provide an adequate rationale. The examiner noted a fall, but does not indicate how this relates to Meniere's disease, hearing loss, and tinnitus. Likewise, the April 2004 VA opinion that provided a negative nexus ignored the Veteran's fall during service and gave no real supporting explanation. Other April 2004 and August 2006 opinions provided no supporting rationale. The October r2006 VA opinion that the Veteran's hearing loss and tinnitus are symptoms of his Meniere's' disease is probative as the examiner provided a supporting rationale and reviewed the evidence of record, to include the internet articles submitted by the Veteran. 

The June 2011 VA examination, however, is significantly probative. The examiner noted that the Veteran's symptoms were classic Meniere's symptoms, including hearing loss and loud roaring tinnitus. The examiner found that the Meniere's disease were not related to military service, noting the onset of symptoms post-discharge, and the lack of known evidence that links acoustic trauma (noise exposure) or a fall to Meniere's disease. Accordingly, as this opinion is accorded substantial weight, the preponderance of the evidence is against the Veteran's claim for service connection. Gilbert, 1 Vet. App. 49. Service connection is not warranted.

 
 
Cervical spine orthopedic disorders and headaches

The service treatment records do not indicate complaints, treatment, or diagnoses related to the cervical spine or headaches. As noted, however, the Veteran did have a fall in service and is service-connected for a low back disability. 

The Veteran's outpatient treatment records note mild arthritic changes at C4-5 and C 5-6 and private medical records indicated that the Veteran was seen by a chiropractor in September 1991 for neck pain. Private records indicate that the Veteran was involved in a motor vehicle accident in September 1995 which resulted in a cervical strain and disc injury. The accident caused a whiplash injury; the Veteran's neck snapped and he had immediate headache and numbness in the 2nd and 3rd fingers of the left hand. As the result of the accident, the reports indicate that the Veteran sustained herniation of three discs in the neck and started to have severe headaches. An MRI dated in January 1996 showed degenerative spine changes consistent with spondylosis most significant at C6-7 level with moderate left neural foraminal narrowing due to a focal disc bulge. A clinic note in February 1996 revealed history of motor vehicle accident with violent extension injury, probable brachial plexus strain as well as cervical strain. The Veteran has been diagnosed with C6-7 stenosis and disc herniation with left sided radiculopathy. 

In a May 2001 statement, the Veteran's chiropractor opined that it was his professional opinion, based on the medical records and x-rays that were reviewed that are on file, the Veteran had a documented musculoskeletal condition with direct etiology to the fall on board the USS Stribling in July of 1969. The chiropractor noted that additional symptomatology noted after the auto accident in 1995 were clearly superimposed onto his previous pathological conditions that existed from the fall in 1969 while in the Navy. The chiropractor then recommended approval of the Veteran's claims for service connection for Meniere's syndrome, cervical osteoarthritis and degenerative joint disorder because they were incurred while in active duty in July of 1969 while on board the USS Stribling.

The Veteran was afforded a VA examination dated in June 1998. The Veteran was noted to have cervical disc injury with head and neck pain with significant cervical muscular headaches secondary to osteoarthritis and DJD and palpable muscle spasm in neck consistent with a history of a motor vehicle accident. A February 2004 MRI indicated multilevel degenerative changes.

An April 2004 VA examination was conducted. The examiner noted arthritis of the cervical spine, multilevel and severe per MRI, with ongoing symptoms of pain, paresthesias in the left hand and weakness in the right hand, aggravated by whiplash injury in 1995. The examiner stated that the current symptoms were at least as likely as not related to the injury in the military. Examination was abnormal for decreased ROM of cervical spine and loss of sensation left hand.

The Veteran was again examined in September 2009, upon review of the claims file. He was noted to have had a fall in service, landing on his buttocks, in approximately 1969. He reported progressive cervical spine pain and stiffness with cervical muscular headaches. A February 2009 MRI indicated multilevel degenerative changes with varying degrees of neural foraminal compromise and no significant central canal stenosis. It was noted that overall, findings had not appreciably changed when compared to cervical spine MRl of February 2004. The examiner found that there was not enough documentation in the claims file to support the diagnosis of a chronic back condition. The Veteran's reported fall occurred in 1968 with one single entry for severe muscle spasm entered at that time. No additional or ongoing reports, or documentation of any back condition was located in the claims file. As such, the examiner found that it was highly unlikely that the isolated acute lumbar muscle spasm occurring in 1968 contributed to his current cervical spine disorder with muscular headaches. 

Finally, the Veteran was afforded a VA examination dated in October 2012. The diagnoses were cervical spine degenerative disc disease and degenerative changes with significant anterior paravertebral ossification and residual muscular tension headaches. The Veteran reported that in 1969-1970 he fell through a hatch and was taken for treatment. He had a back injury requiring surgery. He reported problems with his hips and lumbar spine and problems with low back pain since then. He reported onset of neck pain about 1992 working at QSD Medical Center. At that time he developed headaches. The Veteran also stated that he went to chiropractor about 1996 in San Diego who told him his Meniere's was likely due to a neck injury. After discharge from service, the Veteran indicated that he went through about a year and a half of acupuncture treatments for his back and neck which helped at the time. He was seen for neck pain about 1996 and it was suggested he have surgery on C6. At the time the Veteran was having neck pain, headaches and numbness in right hand. He did not have surgery. He reported neck pain since then with various treatments. The examiner noted that the Veteran did not report his history of 1995 motor vehicle accident that was noted in records to have resulted in neck injury. After examination, the examiner found that the Veteran's cervical spine condition is less likely than not proximately due to or the result of the Veteran's service connected condition. The examiner found that there was no support in the medical literature for degenerative changes in the lumbar spine to cause degenerative changes in the cervical spine. Degenerative changes in the lumbar spine and in the Veteran's case, the additional surgical fusion of Ll-L4, did not cause significant changes in body mechanics to develop cervical spine degenerative disease. Therefore, the examiner stated that there was no reasonable pathophysiologic mechanism for the development of cervical degenerative changes based on lumbar spine condition. It was noted that the two conditions can often be seen together because a genetic predisposition for degenerative changes can be diffuse affecting multiple joints including the various areas of the spine. However, there was no support that degenerative changes in one area causes the degenerative changes in another area. The examiner then stated that it had been established there was no evidence that the Veteran had a cervical condition or a cervical injury in service. Medical records indicate the Veteran had some minor symptoms of neck pain with mild degenerative changes noted in 1988 - 1991 followed by marked worsening of symptoms following the motor vehicle accident in 1995. As such, the examiner found that the Veteran's current significant degenerative disease in the cervical spine was more likely than not caused by the motor vehicle accident in 1995 when he suffered a severe whiplash type injury. This type of injury has been linked in the medical literature to symptoms of chronic neck pain, headaches and accelerated degenerative changes as found in the Veteran. 

The Board finds that service connection for cervical spine orthopedic disorders and headaches is not warranted. First, there are current diagnoses of record. See 38 C.F.R. § 3.303(a); Shedden, 381 F.3d at 1167. 

Second, as noted, there are in-service events of a fall during service. However, the Veteran has not asserted cervical spine diagnoses or symptoms during service. Rather, he asserts that it is related to the fall during service or to his service-connected b back disability. Moreover, the evidence of record does not demonstrate a diagnosis of arthritis within one year of service discharge. Accordingly, as there are current disabilities with incidents during service, the Board must consider the presence of a nexus.

The medical evidence of record indicates that the Veteran had no treatment for his neck until approximately 1988, over 17 years after military service. In addition, the Veteran had a serious whiplash injury in a motor vehicle accident in September 1995. 

Third, and notably, however, there are multiple medical opinions of record. The May 2001 private chiropractor statement is not significantly probative as there is no supporting rationale; rather, the examiner only stated he reviewed the records and x-rays. But such a statement, without any explanation does not permit the Board to accord it any significant value. The April 2004 VA examination is also no probative as the examiner also did not provide any supporting explanation. A September 2009 VA examination is also not significantly credible; although it provides a supporting rationale, it appears to rely solely on the lack of documented cervical spine diagnoses during service. 

The October 2012 VA examination, however, is accorded substantial weight. The examiner opined that the Veteran's cervical spine degenerative disc disease and degenerative changes with significant anterior paravertebral ossification and residual muscular tension headaches was less likely than not proximately due to or the result of the Veteran's service connected condition. The examiner noted that the medical literature does not support degenerative changes in the lumbar spine cuasing degenerative changes in the cervical spine and that there was no reasonable pathophysiologic mechanism for the development of cervical degenerative changes based on lumbar spine condition. The examiner rdid note that the two conditions were often seen together because a genetic predisposition for degenerative changes can affect multiple joints.

The examiner then opined that the Veteran's cervical spine disorder was more likely caused by the motor vehicle accident in 1995 when he suffered a severe whiplash type injury because type of injury has been linked in the medical literature to symptoms of chronic neck pain, headaches and accelerated degenerative changes as found in the Veteran. The examiner noted that the evidence didn't show a cervical injury during service; rather, medical records showed minor symptoms of neck pain with mild degenerative changes noted in 1988 - 1991 followed by marked worsening of symptoms following the motor vehicle accident in 1995. 

The Veteran has contended on his own behalf that his conditions are related to his military service, to include his documented fall aboard ship. The Veteran has included statements and lay statements submitted on his behalf indicating diagnoses and symptoms of Meniere's syndrome shortly after service and his belief that his cervical injury began in service as a result of his fall or secondary to his service-connected back disability. In this regard, lay witnesses are competent to provide testimony or statements relating to symptoms or facts that are observable and within the realm of his or her personal knowledge. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir. 2007) (noting that lay testimony may be competent to identify a particular medical condition). Competence to establish a diagnosis of a condition can exist when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau, 492 F.3d 1372. Similarly, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007).

Lay evidence may also be competent to establish medical etiology or nexus. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In this case, however, the question of whether Meniere's with hearing loss and tinnitus or a cervical condition with headaches are related to military service are complex medical questions that are not subject to lay observation alone. Hence, the opinions of the Veteran in this regard are not competent in this case. Additionally, even if competent, they are outweighed by the VA examiner opinions that are based upon a review of the relevant evidence, including the Veteran's lay statements, and are supported by reasoned explanations. 

In summary, the evidence in this case is against the claims. As such, the preponderance of the evidence is against service connection. Reasonable doubt does not arise and the claims are denied. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Service connection for left ear Meniere's disease with hearing loss and tinnitus is denied.

Service connection for a chronic disability involving the cervical spine, to include cervical muscular headaches, is denied. 




______________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs