Muriel C. DYMENT, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 96–691.

United States Court of Appeals for Veterans Claims.

Argued June 14, 1999.

Decided Nov. 2, 1999.

Karen B. Levin, with whom Michael P. Horan was on the brief, for the appellant.

Lisa Ann Willett, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and R. Randall Campbell were on the brief, for the appellee.

Before KRAMER, FARLEY, and HOLDAWAY, Judges.

FARLEY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a concurring opinion.

FARLEY, Judge:

This is an appeal from a March 8, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for the veteran's death. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. FACTS

The veteran, William G. Dyment, served in the U.S. Navy from 1942 to 1948, in the U.S. Army from 1949 to 1952, and in the Navy from 1958 to 1968. Record (R.) at 23, 482. His service medical records (SMRs) do not show complaints of or treatment for any lung or respiratory problems. R. at 25–119.

From September 29 to October 8, 1991, the veteran was admitted to a VA medical center for a left anterior thoracotomy and lung biopsy. The treatment notes referenced x-rays taken in 1989 which revealed some bilateral interstitial disease and noted that in 1991 there was a marked increase in the amount of bilateral interstitial disease. R. at 139. The diagnosis was

"interstitial lung disease, chronic [ ] fibrosis." R. at 139. The biopsy did not reveal the presence of asbestos fibers. R. at 161, 485.

On the day of his discharge from the hospital, the veteran applied for service connection for "pulmonary fibrosis-cancer to lungs-asbestos exposure," alleging he was exposed to asbestos while on naval ships. R. at 129–31. His condition was described as idiopathic pulmonary fibrosis during two hospitalizations between January and March 1992. R. at 179, 183. Subsequently, the VA regional office (RO) requested additional information from the veteran regarding his alleged exposure (R. at 136–37), but he failed to respond. The claim was eventually denied in April 1992. R. at 192–94.

On June 24, 1992, the veteran died; the cause of death was listed as "end stage pulmonary fibrosis," with "chronic obstructive pulmonary disease" noted as a "condition contributing to death but not related to" it. R. at 211. The widow of the deceased veteran thereafter filed a claim for service connection for the cause of his death, alleging asbestos exposure was the cause of the fatal pulmonary fibrosis. R. at 224. This claim was denied. R. at 229.

On appeal, the BVA, in 1995, remanded the claim for further development, in part for the RO to obtain a medical opinion by a board-certified pulmonary specialist "as to whether it is at least as likely as not that presumed exposure to asbestos in service, caused or contributed to any disability that played a material causal role in the veteran's death." R at 330. An opinion was provided by Dr. Banner who wrote that the issue was whether the veteran's pulmonary fibrosis was due to asbestos exposure. R. at 484–85. Rather than presume exposure, however, he reviewed the veteran's history and observed that neither the veteran's occupational history nor his time on Navy ships was suggestive of heavy asbestos exposure. R. at 485. He also stated that there was no evidence, either by x-ray or by biopsy, that was suggestive of asbes-

tos, and concluded: "[I]t is reasonable to say that one cannot totally rule out the possibility that asbestos could have contributed to this patient's lung disease, but [o]n balance, the overwhelming probability is that asbestos was not involved in this patient's disease." *Id.* The BVA subsequently denied the claim on the merits. This appeal followed.

The appellant argues that a remand is warranted for five reasons: (1) the BVA failed to apply DVB CIRCULAR (CIRCULAR) 21–88–8 and MANUAL M21–1 ( MANUAL M21–1), ¶ 7.68, because it did not make a specific finding that the veteran was *not* exposed to asbestos during service; (2) Dr. Banner disregarded the BVA's remand instruction to presume exposure and based his opinion on his perception that the veteran's records failed to indicate heavy asbestos exposure, therefore violating *Stegall v. West*, 11 Vet.App. 268 (1998); (3) the BVA used an incorrect standard that exceeded the instructions contained in the MANUAL M21–1 by not accepting the presumption of exposure and by instead making a finding that service records did not contain positive reports of asbestos exposure in service; (4) the BVA failed to assist in the development of the appellant's claim by not seeking evidence that the veteran's ships did not contain asbestos and by not obtaining a medical opinion that presumed exposure; and (5) the decision lacks reasons and bases for its conclusion that the veteran was not exposed to asbestos because it did not discuss the MANUAL M21–1 provision noting that WWII Navy personnel were exposed to asbestos and, because during a 1994 hearing, a BVA member recognized that the veteran had service on ships that exposed their crews to asbestos.

The Secretary responded that the claim was appropriately developed; the decision is supported by the medical evidence; the MANUAL M21–1 provisions do not require the BVA to presume exposure but, rather, that this is a factual issue open to question and, in any event, presumptions can be

rebutted; *Ennis v. Brown,* 4 Vet.App. 523 (1993), did not hold that exposure is presumed; and that a *Stegall* remand is not required because the BVA's remand was substantially complied with in that the information sought was obtained. He maintained that he failed to see what more could be done to assist in obtaining more records, and stated that the BVA decision contained adequate reasons or bases. Finally, he alleged that *Ashford v. Brown,* 10 Vet.App. 120 (1997), should govern disposition of this appeal.

In her reply brief, the appellant argued that contrary to the Secretary's assertions, the MANUAL M21-1 does provide a presumption of exposure for WWII Navy veterans who served on military ships, and that a remand is required because Dr. Banner did not comply with the BVA's remand instructions. He argues that *Ennis* and not *Ashford* is dispositive.

## II. ANALYSIS

■ Pursuant to 38 U.S.C. § 1310, dependency and indemnity compensation (DIC) is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Hanna v. Brown,* 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1996). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1996). To be a contributory cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c) (1996). A finding of service connection, or no service connection, is a finding of fact reviewed under the "clearly erroneous" standard. *See Swann v. Brown,* 5 Vet.App. 229, 232 (1993).

Here, in its statement of reasons and bases, the BVA concluded that the appellant's claim was well grounded in light of a statement by Dr. Banner, a VA pulmonary specialist, that "one could not totally rule out the possibility that asbestos could have contributed to the veteran's lung disability." *See Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). ("A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation". Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]"). The BVA subsequently weighed the evidence and found, on the merits, that the lung biopsy did not contain indicators of asbestos exposure and that no diagnosis of asbestosis was ever submitted. The BVA relied heavily on Dr. Banner's opinion which not only specifically addressed etiology but also did so in light of the appellant's medical history. Based upon the record on appeal, we find that there was a plausible basis in the record for the BVA's determination.

### A. Sufficiency of the Evidence for the Purpose of an Adjudication on the Merits

■ Assuming arguendo that the claim was well grounded, it must necessarily fail on the merits. The Board concluded that a preponderance of the evidence is against the appellant's claim that the disease which caused the veteran's death was the result of in-service exposure to asbestos. Even assuming that there was exposure to asbestos in service, as the Board did, the absence of any evidence linking asbestos to the veteran's condition constitutes a plausible basis in the record for the Board's determination. *See Swann v. Brown,* 5 Vet.App. 229, 232 (1993) (a finding of service connection, or no service connection, is a finding of fact reviewed under the "clearly erroneous" standard). Dr. Banner's statement, "that one cannot totally rule out the possibility" of a connection between asbestos and the appellant's death is especially insufficient in light of his notations

that no evidence reflecting asbestos could be found in any x-rays or biopsies and his conclusion that "the overwhelming probability is that asbestos was not involved in this patient's death." R. at 485.

█ With respect to the appellant's argument that VA had failed in its duty to assist her claim, we note that the Secretary had obtained the appellant's SMRs, military personnel records, findings of a lung biopsy and other procedures, and submitted the claim to a pulmonary specialist for review. Accordingly, we conclude that the Secretary has satisfied his duty to assist. *See* 38 U.S.C. § 5107(a); *Allday v. Brown*, 7 Vet.App. 517 (1995) (when appellant submits a well-grounded claim, the Secretary has a duty to assist in its development).

### B. Arguments Based Upon Manual M21–1

█ Conditions associated with asbestos exposure are rated under Interstitial Lung Disease, 38 C.F.R. § 4.97, Diagnostic Code (DC) 6833. No specific regulations govern adjudication of asbestos-related claims. The only guidance which exists is provided in the CIRCULAR, the information and instructions from which were included in MANUAL M21–1, ¶ 7.68 (Sept. 21, 1992). That provision states in relevant part:

High exposure to asbestos and a high prevalence of disease have been noted in insulation and shipyard workers. This is significant considering that, during World War II, several million people employed in U.S. shipyards and U.S. Navy Veterans were exposed to chrysotile products as well as amosite and crocidolite since these varieties of African asbestos were used extensively in military ship construction.

Under the heading, "Guidelines," the MANUAL M21–1 provides,

(1) When considering VA compensation claims, rating boards must determine whether or not military records demonstrate evidence of asbestos exposure in

service. The boards must also assure that development is accomplished to determine whether or not there is pre-service and/or post-service evidence of occupational or other asbestos exposure.

The appellant's argument that first the CIRCULAR and now the MANUAL M21–1 create a *presumption* of exposure to asbestos for personnel who served aboard Navy ships initially fails because of the very language and structure of the provisions. The language itself does not speak of a presumption. Rather, it alerts the raters to the epidemiological facts that insulation and shipyard workers have been found to have had a high incidence of asbestos exposure and a high "prevalence of disease." "This," the raters are told, "is significant" because millions of shipyard workers and Navy veterans were exposed to chrysotile, amosite, and crocidolite, which are forms of asbestos. Having performed this educational function, the provisions then go on to offer guidance to adjudicators and rating specialists considering claims where such facts might be relevant, i.e., they "must determine whether or not military records demonstrate evidence of asbestos exposure in service." Further, the raters are directed to continue development to the point that a determination can be made as to the existence of any "pre-service and/or post-service evidence of occupational or other asbestos exposure." If the Circular were to be read as establishing the presumption of exposure to asbestos solely by virtue of shipboard service, there would have been no need for the Circular to go on to require such additional development.

█ Moreover, the appellant's reliance upon the MANUAL M21–1 is also misplaced because the provisions in question do not give rise to enforceable substantive rights but merely contain statements of policy. *See Morton v. West*, 12 Vet.App. 477 (1999) (Court held manual provisions, circulars, and regulations inconsistent with relevant statute pertaining to the duty to assist do not create substantive rights and are not

entitled to judicial deference). As in *Morton*, the MANUAL provision and CIRCULAR at issue are pure policy guidelines. They constitute only "[a]n interpretative statement [which] simply indicates an agency's reading of a statute or a rule ... [and does] not intend to create new rights or duties, but only reminds affected parties of existing duties." *Paralyzed Veterans of America v. West*, 138 F.3d 1434, 1436 (Fed.Cir.1998) (quoting *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C.Cir.1993)). The MANUAL M21–1 provisions do not address whether a specific disability is to be granted or denied; nor do they impinge upon a benefit or right enjoyed by the veteran. Instead, they are, at most, administrative directions to the field containing guidance as to the procedures to be used in the adjudication process.

The Court has previously come to the same conclusion in a case having analogous facts, referring to the CIRCULAR and the MANUAL M21–1 provision with respect to asbestos exposure as "guidelines" for claim-development:

> These guidelines do not create a new presumption or a new basis of entitlement to benefits, but rather set forth a process for VA to follow where asbestos exposure creates a possible nexus between a current disability and service. Accordingly, the Court holds that the DVB CIRCULAR did not liberalize the requirements for entitlement to disability benefits, or bestow any rights on VA claimants, and cannot, therefore, satisfy the requirement that new and material evidence be presented.

*Ashford*, 10 Vet.App. at 124. As the appellant pointed out, in *Ennis, supra*, the Court remanded a claim for further development where the Board denied entitlement to service connection after making a finding that the appellant's disabilities were not among the recognizable asbestos-related disabilities. In that case, however, the Board had concluded that the appellant's occupation as a machinist mate was such that it would place him at high risk

for exposure to asbestos. Moreover, that case does not support the proposition that the Secretary must presume that Navy veterans of World War II were exposed to asbestos.

We therefore hold that neither the MANUAL M21–1 nor the CIRCULAR creates a presumption of exposure to asbestos solely from shipboard service. Rather, they are guidelines which serve to inform and educate adjudicators as to the high exposure of asbestos and the prevalence of disease found in insulation and shipyard workers and they direct that the raters develop the record; ascertain whether there is evidence of exposure before, during, or after service; and determine whether the disease is related to the putative exposure.

The Court notes that on September 17, 1999, the appellant supplemented her briefing with reference to *Hayre v. West*, 188 F.3d 1327 (Fed.Cir.1999). Unlike the provisions of the MANUAL M21–1 in the instant case, the portion of *Hayre* upon which the appellant relies deals with VA's obligation to obtain SMRs as defined in the MANUAL M21–1 and is therefore not for application in the present case.

**B.  Arguments Based Upon** Stegall

"[A] remand by ... the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders ... [and] imposes upon the Secretary of Veterans Affairs a concomitant duty to ensure compliance with the terms of the remand, either personally or as the 'the head of the Department.'" *Stegall*, 11 Vet.App. at 271 (quoting 38 U.S.C. § 303). Although Dr. Banner failed to presume the appellant's exposure to asbestos, as the BVA remand requested, the examiner, after reviewing the patient's medical history, radiographic findings, CT scan, and lung biopsy, nonetheless made the medical conclusions that there was "no evidence, either on the x-rays or in the tissue biopsy, of findings particularly suggestive of asbestos" and "[o]n balance, the overwhelming probability is that asbestos was not involved in this patient's disease."

R. at 485. Because the Board remand order requested that the examiner should ultimately make a determination as to whether asbestos contributed to a disability that played a material role in the veteran's death, we find that the examiner more than substantially complied with the Board's remand order.

## II. Conclusion

Upon consideration of the record, the appellant's original and reply briefs, and the Secretary's brief, the March 8, 1996, decision of the Board is AFFIRMED.

KRAMER, Judge, concurring:

I concur in the result of the majority opinion but disagree in several regards with the analysis to support that result. First, the claim is not well grounded in that there is no medical nexus evidence to satisfy element (3) of *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table) (to well ground service-connection claim generally requires (1) medical evidence of current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of disease or injury; and (3) medical evidence of nexus between claimed in-service disease or injury and current disability). The evidence most favorable to the appellant's claim offered by Dr. Banner was that "one cannot totally rule out the possibility that asbestos could have contributed to this patient's lung disease." R. at 485. In *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992), the Court held that a "may or may not" opinion from a doctor regarding medical nexus did not establish sufficient plausibility. In my view, Dr. Banner's statement is weaker than the statement rejected in *Tirpak*. Indeed, exactly how weak Dr. Banner's opinion is as medical nexus evidence is made clear by his statement that the "the overwhelming probability is that asbestos was not involved." R. at 485. Moreover, even if Dr. Banner's statement could pass muster under *Tirpak*, it would only establish plausibility with respect to a relationship between the cause of death and asbestos exposure; it in no way suggests a relationship between cause of death and *in-service* asbestos exposure. Second, if indeed the appellant's claim was well grounded under 38 U.S.C. § 5107(a), I do not believe that the duty to assist established by that section would have been fulfilled. As the appellant pointed out during oral argument, documents, such as the ship blueprints, might be available which could potentially indicate whether the pipes under which the veteran slept were wrapped with asbestos. Third, for the reasons stated in the joint dissent to the order denying a full Court decision in *Morton v. West*, 12 Vet.App. 477 (1999), I disagree with the majority's MANUAL M21–1 general analysis as to how to determine whether a rule is substantive or interpretive. *Morton v. West*, 13 Vet. App. 205 (1999) (en banc order) (Steinberg and Kramer, JJ., dissenting). Fourth, although I wholeheartedly agree that the MANUAL M21–1 and VA CIRCULAR provisions in this case in no way can be construed to create a presumption of in-service exposure, I disagree with the majority's statement, upon which it relies to demonstrate that those provisions do not involve a substantive right, that the MANUAL M21–1 and VA CIRCULAR merely interpret a statute or a rule. Indeed, the majority points to no statute or rule which is being interpreted nor am I aware of any.