Citation Nr: 1717654 
Decision Date: 05/22/17 Archive Date: 06/05/17

DOCKET NO. 12-24 301A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Los Angeles, California


THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent prior to August 18, 2015 and in excess of 20 percent since August 18, 2015 for a thoracolumbar spine disability.

2. Entitlement to an initial evaluation in excess of 10 percent prior to July 26, 2012 and in excess of 20 percent since July 26, 2012 for degenerative joint disease of the left knee.

3. Entitlement to an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the left lower extremity.

4. Entitlement to an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the right lower extremity.

5. Entitlement to a total disability rating based on individual unemployability (TDIU).



REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. W. Kim, Counsel


INTRODUCTION

The Veteran served on active duty in the Air Force from November 2001 to September 2002.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada, which granted service connection for degenerative joint disease of the left knee and a thoracolumbar spine disability, each rated at 10 percent disabling effective July 26, 2007. The case was later transferred to the RO in Los Angeles, California.

The Veteran attended a videoconference before the undersigned in August 2015. A transcript of the proceeding has been associated with the claims file.

In January 2016, the Board remanded the case for further development. The record reflects substantial compliance with the remand requests. See Dyment v. West, 13 Vet. App. 141 (1999).

A February 2016 VA examination report reflects the examiner's opinion that the Veteran is unable to work due to his low back disability. Thus, the question of entitlement to a total disability rating based on individual unemployability (TDIU), due to the service-connected low back disability, has been raised by the record and is part of the appeal. Rice v. Shinseki, 22 Vet. App. 447 (2009); Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001).

A May 2016 rating decision increased the rating for the thoracolumbar spine disability to 20 percent effective August 18, 2015, and increased the rating for degenerative joint disease of the left knee to 20 percent effective July 26, 2012.

The May 2016 rating decision also granted service connection for lumbar radiculopathy of the left lower extremity and lumbar radiculopathy of the right lower extremity, with an effective date of August 18, 2015. In June 2016, the Veteran filed a notice of disagreement to the effective date of the awards. 

While additional evidence has been added to the claims file since the May 2016 supplemental statement of the case, the Veteran's representative submitted a waiver of RO review of that evidence in March 2017. 

The issues of entitlement to an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the left lower extremity, an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the right lower extremity, and a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to August 18, 2015, the Veteran's thoracolumbar spine disability had not resulted in forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

2. From August 18, 2015 to February 11, 2016, the Veteran's thoracolumbar spine disability had resulted in forward flexion of the thoracolumbar spine 30 degrees or less.

3. Since February 12, 2016, the Veteran's thoracolumbar spine disability has not resulted in forward flexion of the thoracolumbar spine 30 degrees or less.

4. Prior to October 22, 2007, the Veteran's degenerative joint disease of the left knee had not been manifested by moderate recurrent subluxation or lateral instability.

5. From February 1, 2008 to May 27, 2009 and from September 1, 2009 to July 25, 2012, the Veteran's degenerative joint disease of the left knee had been manifested by a dislocated, semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint.

6. Since July 26, 2012, the Veteran's degenerative joint disease of the left knee has been manifested by a dislocated, semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint, but not by recurrent subluxation or lateral instability, or nonunion or malunion of the tibia and fibula.


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 10 percent prior to August 18, 2015 for a thoracolumbar spine disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5237 (2016). 

2. The criteria for an evaluation of 40 percent, but no higher, from August 18, 2015 to February 11, 2016 for a thoracolumbar spine disability have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5237 (2016). 

3. The criteria for an evaluation in excess of 20 percent since February 12, 2016 for a thoracolumbar spine disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5237 (2016). 

4. The criteria for an initial evaluation in excess of 10 percent prior to October 22, 2007 for degenerative joint disease of the left knee have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5257 (2016).

5. The criteria for an evaluation of 20 percent, but no higher, from February 1, 2008 to May 27, 2009 and from September 1, 2009 to July 25, 2012 for degenerative joint disease of the left knee have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5258 (2016).

6. The criteria for an evaluation in excess of 20 percent since July 26, 2012 for degenerative joint disease of the left knee have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.71a, Diagnostic Code 5258 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2016). 

In this case, the claim arises from an appeal of the initial ratings following the grant of service connection. Courts have held that once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Thus, no further notice is needed.

VA also has a duty to assist a claimant in the development of a claim. That duty includes assisting in obtaining service treatment records and pertinent post-service treatment records and providing an examination or obtaining an opinion when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

In this case, all necessary development has been accomplished and therefore appellate review may proceed without prejudice to the Veteran. Bernard v. Brown, 4 Vet. App. 384 (1993). The claims folder contains the Veteran's service treatment records, and post-service reports of VA and private treatment and examination. Also of record are the Veteran's statements in support of the claim. The Board has reviewed those statements and concludes that no available outstanding evidence has been identified. The Board has also reviewed the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the claim. 

VA provided the Veteran with an examination to determine the nature and etiology of his disabilities in January 2008. VA provided the Veteran with examinations to determine the severity of his disabilities in May 2012, July 2012, and February 2016. Regrettably, a complete copy of the May 2012 examination report could not be obtained. However, the Board finds the other examination reports of record to be thorough and adequate. The examiners interviewed and examined the Veteran, including eliciting a history from the Veteran, and provided the information needed to evaluate the disabilities under the applicable rating criteria. 

In the prior remand, the Board requested that the AOJ attempt to obtain a copy of the May 2012 examination report as well as any treatment records not already in the claims file and schedule the Veteran for another VA examination to determine the severity of his disabilities. The AOJ obtained a negative reply from the Las Vegas VA Medical Center regarding the May 2012 VA examination report. The AOJ contacted the Veteran to advise him of the situation and ask whether he had the report in his possession, to which the Veteran replied in the negative. The AOJ obtained updated VA treatment records and afforded the Veteran an examination. Thus, the Board reiterates that there has been substantial compliance with the remand requests. See Dyment, 13 Vet. App. 141. Further, the Board finds that a complete copy of the May 2012 VA examination report is unavailable.

Given the above, the Board finds that no further notice or assistance is required to fulfill VA's duty to assist. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Higher Rating

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity resulting from disability. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2016). The Board has been directed to consider only those factors contained wholly in the rating criteria. Massey v. Brown, 7 Vet. App. 204 (1994). However, the Board has been advised to consider factors outside the specific rating criteria in determining the level of occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for the higher evaluation; otherwise, the lower evaluation will be assigned. 38 C.F.R. § 4.7 (2016). Any reasonable doubt regarding the degree of disability will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2016).

A Veteran's entire history is to be considered when assigning disability ratings. 38 C.F.R. § 4.1 (2016); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The terms mild, moderate, and severe are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are equitable and just. 38 C.F.R. § 4.6 (2016). Use of such descriptive terms by medical examiners, although an element of the evidence to be considered by the Board, is not dispositive of an issue. Such evidence must be interpreted in light of the whole recorded history, reconciling the evidence into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2016).

Thoracolumbar Spine Disability

The Veteran's thoracolumbar spine disability has been rated under Diagnostic Code 5237. 38 C.F.R. § 4.71a (2016). From July 26, 2007, the disability has been rated at 10 percent and from August 18, 2015, the disability has been rated at 20 percent. 

The following ratings are available under the General Rating Formula for Diseases and Injuries of the Spine: 

100 percent for unfavorable ankylosis of the entire spine; 
50 percent for unfavorable ankylosis of the entire thoracolumbar spine; 
40 percent for forward flexion of the thoracolumbar spine to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine; and 
20 percent for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

38 C.F.R. § 4.71a (2016).

Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. Plate V, 38 C.F.R. § 4.71a. 

At the January 2008 examination, the Veteran reported severe weekly flare-ups of low back pain lasting one to two days. He noted that he retired at the end of 2006 due to low back and left knee pain. Examination revealed no spasm or guarding. While there was localized tenderness, the examiner noted that it was not severe enough to result in an abnormal gait or abnormal spinal contour. Range of motion testing revealed forward flexion to 80 degrees, extension to 15 degrees, left lateral flexion to 20 degrees, right lateral flexion to 30 degrees, and left and right lateral rotation to 35 degrees, all with pain at the end of range of motion. Repetitive use testing revealed forward flexion to 70 degrees, extension to 15 degrees, left lateral flexion to 20 degrees, right lateral flexion to 30 degrees, and left and right lateral rotation to 35 degrees. The examiner reported that x-rays were normal.

At the July 2012 examination, the Veteran reported flare-ups of pain during which he cannot sit, stand, or walk for prolonged periods or engage in repetitive bending or heavy lifting. Range of motion testing revealed forward flexion to 90 degrees with pain beginning at 75 degrees, extension to 30 degrees with pain beginning at 15 degrees, left and right lateral flexion to 30 degrees with pain beginning at 20 degrees, and left and right lateral rotation to 30 degrees with pain beginning at 20 degrees. Repetitive use testing revealed forward flexion to 75 degrees, extension to 15 degrees, left and right lateral flexion to 20 degrees, and left and right lateral rotation to 20 degrees. The examiner indicated that the Veteran had functional loss or impairment of the thoracolumbar spine and/or additional limitation of range of motion due to less movement than normal, pain on movement, and interference with sitting, standing, and/or weightbearing. The Veteran did not exhibit guarding or muscle spasm. The Veteran did not have any other neurological manifestations such as bowel or bladder problems. The examiner noted that the Veteran does not have intervertebral disc syndrome. The Veteran reported regular use of a lumbar brace for pain. The examiner indicated that the Veteran's low back disability would impact his ability to work, resulting in impaired prolonged sitting, standing, walking, repetitive bending, or heavy lifting. 

At the August 18, 2015 Board hearing, the Veteran submitted an August 2015 disability benefits questionnaire completed by a private physician. The Veteran complained of intermittent bowel and bladder incontinence when the low back pain is more severe. Range of motion testing revealed forward flexion to 30 degrees, extension to 15 degrees, left lateral flexion to 30 degrees, right lateral flexion to 15 degrees, left lateral rotation to 30 degrees, and right lateral rotation to 15 degrees. Repetitive use testing revealed forward flexion to 15 degrees, extension to 15 degrees, left and right lateral flexion to 15 degrees, and left and right lateral rotation to 15 degrees. 

At the February 2016 examination, the Veteran reported low back pain and left-sided sciatica, which of late has occasionally resulted in loss of bowel and bladder control requiring him to occasionally use disposable undergarments. He reported difficulty with walking, putting on shoes, prolonged sitting, and turning sideways. Examination revealed forward flexion to 50 degrees. Repetitive use testing did not reveal any additional loss of function or range of motion. The examiner indicated that he was unable to say without mere speculation whether pain, weakness, fatigability, or incoordination would significantly limit functional ability with repeated use over a period of time. The examiner noted that the Veteran was being examined during a flare-up and that pain and incoordination were significantly limiting functional ability. The examiner stated that the Veteran has intervertebral disc syndrome which has resulted in episodes of bed rest prescribed by a physician having a total duration of at least one week but less than two weeks during the past 12 months. However, the examiner noted that the above was based on medical history as described by the Veteran only, without documentation. The examiner stated that due to the Veteran's low back disability he cannot work due to pain and inability to walk much or stand for long periods of time.

Given the above, prior to August 18, 2015, even considering functional loss due to pain and other factors, the Veteran's thoracolumbar spine disability had not more nearly approximated forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. §§ 4.40, 4.45, 4.59 (2016); DeLuca v. Brown, 8 Vet. App. 202 (1995). The evidence of record simply does not support such findings. Thus, the Board finds that a higher evaluation based on limitation of motion is not warranted.

There is also no evidence that the Veteran's disability resulted in incapacitating episodes having a total duration of at least 2 weeks during any 12-month period during the rating period. The Veteran denied having incapacitating episodes at the VA examination and the other medical evidence of record does not show any such episodes. Thus, a higher rating based on incapacitating episodes is not warranted.

From August 18, 2015, there is evidence of forward flexion of the thoracolumbar spine to 30 degrees or less. The August 2015 private examination revealed forward flexion to 30 degrees which decreased to 15 degrees after repetitive use testing. Thus, a higher 40 percent rating is warranted. However, there is no evidence of unfavorable ankylosis of the entire thoracolumbar spine to warrant an even higher 50 percent rating. There is also no evidence that the Veteran's disability resulted in incapacitating episodes having a total duration of at least 6 weeks during any 12-month period. The Veteran reported at least 2 weeks but less than 4 weeks of incapacitating episodes at the August 2015 examination. The 40 percent rating is warranted to the date prior to the February 2016 VA examination report, which will be discussed below.

The February 2016 VA examination revealed forward flexion to 50 degrees with no change after repetitive use testing. Thus, from the February 12, 2016 date of that examination, the Veteran's thoracolumbar disability has resulted in forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees. Accordingly, a 20 percent rating is warranted. Even considering functional loss due to pain and other factors, the Veteran's disability has not more nearly approximated forward flexion of the thoracolumbar spine to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. 202. The evidence of record simply does not support such findings. 

There is also no evidence that the Veteran's disability has resulted in incapacitating episodes having a total duration of at least 4 weeks during any 12-month period during the rating period. The Veteran reported less than 2 weeks of incapacitating episodes at the February 2016 examination. Thus, a higher rating based on incapacitating episodes is not warranted.

Lastly, while the Veteran's thoracolumbar spine disability has resulted in bowel and bladder symptoms, those symptoms are not of such frequency or severity to warrant a separate rating. 

The August 2015 disability benefits questionnaire notes intermittent bowel and bladder incontinence when the low back pain is more severe and the February 2016 examination report notes left-sided sciatica which has occasionally resulted in loss of bowel and bladder control requiring the occasional wearing of absorbent materials or a pad. 

With respect to urinary incontinence, as a voiding dysfunction, urine leakage requiring the wearing of absorbent materials which must be changed less than 2 times per day warrants a 20 percent rating. 38 C.F.R. § 4.115a (2016). Thus, to warrant a compensable rating, the Veteran's disability must require the daily wearing of absorbent materials. However, the record indicates that the Veteran needs to wear absorbent materials only when his back pain, especially the sciatica, is more severe. Of note, a July 2014 VA treatment record shows that he wears Depends at times and that it was not frank incontinence but rather just some dribbling. In every instance where the schedule does not provide a 0 percent evaluation for a diagnostic code, a 0 percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31 (2016). Thus, a separate compensable rating for urinary incontinence is not warranted. 

With respect to bowel incontinence, Diagnostic Code 7332 for impairment of sphincter control provides for a 30 percent rating for occasional involuntary bowel movements necessitating wearing of pad; a 10 percent rating for constant slight or occasional moderate leakage; and a 0 percent rating for healed or slight without leakage. 38 C.F.R. § 4.114 (2016). Thus, to warrant a compensable rating, the Veteran's disability must result in constant slight or occasional moderate leakage. However, the record fails to show that the Veteran's disability results in such. The bowel incontinence only occurs on an occasional basis and there is no evidence that it results in moderate leakage on those occasions. Of note, a March 2014 VA treatment record shows that he does not have frank fecal incontinence but rather some leakage of liquid stool. Thus, a separate compensable rating for bowel incontinence is also not warranted. 

The Board notes that a May 2016 rating decision granted service connection for lumbar radiculopathy of the lower extremities, assigning a 40 percent rating for the left lower extremity and a 10 percent rating for the right lower extremity, both effective August 18, 2015. While the Veteran has expressed disagreement with the assigned effective date of the awards, he has not expressed any disagreement with the assigned ratings. Thus, the Board will not address them here.

In conclusion, a 40 percent evaluation from August 18, 2015 to February 11, 2016 for a thoracolumbar spine disability is warranted. However, as the preponderance of the evidence is against an even higher rating during that time or at any other time during the rating period, those aspects of the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Degenerative Joint Disease of the Left Knee

The March 2008 rating decision granted service connection for degenerative joint disease of the left knee and assigned a 10 percent rating under Diagnostic Code 5003-5257 effective July 26, 2007. An August 2012 rating decision assigned a temporary total evaluation from October 23, 2007 to January 31, 2008 for surgery or other treatment necessitating convalescence and again from May 28, 2009 to August 30, 2009, resuming the 10 percent rating in between those periods and from September 1, 2009. Then, the May 2016 rating decision increased the rating to 20 percent from July 26, 2012 under Diagnostic Code 5258.

The Veteran's degenerative joint disease of the left knee had been evaluated as residuals under Diagnostic Code 5257 for other impairment of the knee. 38 C.F.R. § 4.27 (2016). Under Diagnostic Code 5257, severe recurrent subluxation or lateral instability warrants a 30 percent rating, moderate recurrent subluxation or lateral instability warrants a 20 percent rating, and slight recurrent subluxation or lateral instability warrants a 10 percent rating. 38 C.F.R. § 4.71a (2016).

Degenerative arthritis is rated under Diagnostic Code 5003, which provides that the disability is rated based on limitation of motion under the appropriate diagnostic codes for the specific joint involved. When the limitation of motion of the specific joint involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion. A 20 percent rating is warranted for X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. Ratings for arthritis are not to be combined with ratings based on limitation of motion of the same joint. 38 C.F.R. § 4.71a.

Since July 26, 2012, the Veteran's degenerative joint disease of the left knee has been evaluated under Diagnostic Code 5258. Under Diagnostic Code 5258, a dislocated, semilunar cartilage with frequent episodes of "locking," pain, and effusion into the joint warrants a 20 percent rating. 38 C.F.R. § 4.71a.

Diagnostic Code 5260 pertains to limitation of flexion. Flexion limited to 60 degrees warrants a 0 percent rating. Flexion limited to 45 degrees warrants a 10 percent rating. Flexion limited to 30 degrees warrants a 20 percent rating. Flexion limited to 15 degrees warrants a maximum 30 percent rating. 38 C.F.R. § 4.71a. 

Diagnostic Code 5261 pertains to limitation of extension. A 0 percent rating is warranted for limitation of extension to 5 degrees. A 10 percent rating requires limitation of extension to 10 degrees. A 20 percent rating requires limitation of extension to 15 degrees. A 30 percent rating requires limitation of extension to 20 degrees. A 40 percent rating requires limitation of extension to 30 degrees. A maximum 50 percent rating requires limitation of extension to 45 degrees. 38 C.F.R. § 4.71a.

Normal knee joint motion is from 0 degrees of extension to 140 degrees of flexion. 38 C.F.R. § 4.71, Plate II (2016).

Separate ratings may be assigned for limitation of flexion and limitation of extension of the same knee. Where a Veteran has both compensable limitation of flexion and compensable limitation of extension of the same leg, the limitations must be rated separately to adequately compensate for functional loss associated with injury to the leg. VAOPGCPREC 9-04. 

Separate ratings may also be assigned for arthritis or limitation of motion and instability of the same knee. However, a separate rating must be based on additional compensable disability. VAOPGCPREC 23-97; Esteban v. Brown, 6 Vet. App. 259 (1994).

A September 2007 private treatment record reflects that examination revealed a normal gait but tenderness and effusion in the knee joint. The physician noted that flexion and extension were moderately limited. An October 2007 private treatment record dated prior to surgery reflects that examination revealed normal range of motion and stability.

An October 2007 VA treatment record dated prior to surgery reflects that examination revealed full range of motion of all joints.

At the January 2008 examination, during a period of convalescence, the Veteran reported a history of left knee partial meniscectomy with debridement in October 2007 and complained of pain, giving way, instability, stiffness, and weakness, with severe daily flare-ups. He also noted daily episodes of "locking" and repeated episodes of effusion. Range of motion testing revealed flexion to 110 degrees with pain beginning at 110 degrees and extension to 0 degrees with pain beginning at 15 degrees, with no additional limitation of motion on repetitive use. There was effusion but no instability. The examiner reported that x-rays were normal and a July 2007 MRI showed a tear of the medial meniscus.

A September 2008 private treatment record reflects that examination revealed limited range of motion of the knee. 

At the July 2012 examination, the Veteran reported flare-ups of pain during which he cannot engage in prolonged standing, walking, climbing stairs, kneeling, squatting, or running. Range of motion testing of the nonservice-connected right knee revealed flexion to 140 degrees and extension to 0 degrees, both without objective evidence of painful motion and with no change on repetitive use testing. Range of motion testing of the left knee revealed flexion to 125 degrees with pain beginning at 110 degrees and extension to 0 degrees with no objective evidence of painful motion. Repetitive use testing revealed flexion to 115 degrees and extension to 0 degrees. The examiner indicated that the Veteran had functional loss or impairment, or additional limitation of range of motion due to less movement than normal, pain on movement, disturbance of locomotion, and interference with sitting, standing, and/or weightbearing. Muscle strength was 5/5. Tests for joint stability were normal. The examiner indicated that there was no evidence or history of recurrent subluxation or dislocation. The examiner noted that the Veteran had a meniscal tear with two surgeries and has frequent episodes of joint "locking," pain, and effusion. The Veteran also reported residual symptoms of constant pain and limitation of range of motion. The examiner indicated that the surgical scars were not painful or unstable, or have a total area equal to or greater than 39 square cm. The Veteran reported regular use of a knee brace for pain. The examiner indicated that the Veteran's left knee disability would impact his ability to work, resulting in impaired prolonged sitting, standing, walking, repetitive bending, or heavy lifting. 

An August 2015 disability benefits questionnaire completed by a private physician notes that the Veteran can walk about 40 feet before needing to stop and rest, and that he has flare-ups with pain on walking and weightbearing, inability to bend or straighten the knee without a lot of pain, and swelling and heat in the knee. Range of motion testing revealed flexion to 90 degrees, but the examiner noted that the Veteran was not able to extend the knee past 45 degrees. The Veteran was unable to perform repetitive use testing. The physician indicated that the Veteran had functional loss and additional limitation of range of motion due to less movement than normal, excess fatigability, incoordination, pain on movement, swelling, disturbance of locomotion, and interference with sitting and standing. Muscle strength was 4/5. The physician indicated that there was extremely unfavorable ankylosis in flexion at an angle of 90 degrees. The physician indicated that there was a history of lateral instability. Tests for joint stability were normal. The physician noted that the Veteran had a meniscal tear with two surgeries and has frequent episodes of joint "locking," pain, and effusion. The Veteran also reported residual symptoms of constant pain and limitation of range of motion. The physician indicated that the surgical scars were not painful or unstable, or have a total area equal to or greater than 39 square cm. The Veteran reported regular use of a knee brace for pain. The physician indicated that the Veteran's left knee disability would impact his ability to work, resulting in impaired prolonged sitting, standing, walking, repetitive bending, or heavy lifting. 

At the February 2016 examination, the Veteran reported flare-ups of sharp, sore pain during which he has limited range of motion and difficulty walking, bending, twisting, and sitting, and has to use a brace. Range of motion testing revealed flexion to 140 degrees and extension to 0 degrees. There was no pain with weight bearing and no objective evidence of localized tenderness or pain on palpation. There was no additional functional loss or range of motion after three repetitions. The examiner was unable to say without mere speculation whether pain, weakness, fatigability, or incoordination significantly limit functional ability with repeated use over a period of time. Muscle strength was 5/5. The examiner indicated that there was no history of recurrent subluxation or lateral instability. There was no joint instability. The examiner noted that the Veteran had a meniscal tear with two surgeries and has frequent episodes of joint "locking," pain, and effusion. The examiner indicated that the surgical scars were not painful or unstable, or have a total area equal to or greater than 39 square cm. The examiner noted that a January 2013 MRI revealed a complex tear of the medial meniscus and a medial collateral ligament sprain. The examiner indicated that the Veteran's disability impacts his ability to perform occupational tasks, noting that he is severely limited due to pain, stiffness, and swelling causing limited walking and ability to stand. 

From July 26, 2007 to October 22, 2007, the Veteran's degenerative joint disease of the left knee had not resulted in moderate recurrent subluxation or lateral instability to warrant a higher 20 percent rating under Diagnostic Code 5257. The October 2007 private medical record just prior to surgery showed no instability of the knee. While the September 2007 record showed that flexion and extension were both moderately limited, with no actual range of motion findings, a compensable rating for either is not warranted under Diagnostic Code 5260 or 5261. 

From February 1, 2008 to May 27, 2009, the Veteran's left knee disability had not resulted in moderate recurrent subluxation or lateral instability to warrant a higher 20 percent rating under Diagnostic Code 5257. The January 2008 examination revealed no knee instability. A compensable rating is also not warranted based on limitation of motion. The January 2008 examination revealed flexion to 110 degrees and extension to 0 degrees. While pain began at 15 degrees of extension, the Veteran was able to fully extend to 0 degrees and there was no additional limitation of extension on repetitive use. Even considering functional loss due to pain and other factors, the findings do not support even a compensable rating for the left knee disability under either Diagnostic Code 5260 or 5261. 38 C.F.R. §§ 4.40, 4.45, 4.59 (2016); DeLuca v. Brown, 8 Vet. App. 202 (1995). While the September 2008 record revealed a finding of limited range of motion of the knee, no actual range of motion findings were provided to support a compensable rating for either limitation of flexion or extension. 

However, at the January 2008 examination, the Veteran complained of frequent episodes of "locking," pain, and effusion into the joint. Thus, a 20 percent rating under Diagnostic Code 5258 is warranted from February 1, 2008 to May 27, 2009. 

While there is no objective evidence dated from September 1, 2009 to July 25, 2012, given the Veteran's continued complaints of frequent episodes of "locking," pain, and effusion into the joint at all subsequent examinations, the Board will continue the 20 percent rating under Diagnostic Code 5258.

The remaining question is whether a rating in excess of 20 percent is warranted since July 26, 2012. A 20 percent rating is the maximum allowed under Diagnostic Code 5258. Thus, the Board will consider whether any other code may enable a higher rating. See Butts v. Brown, 5 Vet. App. 532 (1993).

Even considering functional loss due to pain and other factors, the findings of the July 2012 and February 2016 VA examinations do not support even a compensable rating under either Diagnostic Code 5260 or 5261. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. 202. Thus, a separate compensable rating under Diagnostic Code 5260 or 5261 is not warranted. 

The Board notes the range of motion findings of flexion to 90 degrees and extension to 45 degrees in the August 2015 disability benefits questionnaire. The Board also notes the finding of extremely unfavorable ankylosis in flexion at an angle of 90 degrees. However, as the Veteran was able to flex and extend the knee, albeit with difficulty, the Board observes that the finding of ankylosis is not supported by the range of motion findings. Moreover, if extension were truly limited to 45 degrees, walking would have been near impossible without the aid of crutches, which was not noted. Given the internal inconsistencies between range of motion findings and the finding of ankyloses, and what appears to be an inaccurate measurement of extension, the Board finds that the range of motion findings of the August 2015 disability benefits questionnaire as recorded are not reliable. Thus, the Board will not apply them in the evaluation of the Veteran's left knee disability.

Despite the Veteran's complaints of instability and giving way, with no objective evidence on examination of recurrent subluxation or lateral instability of the knee, a separate rating under Diagnostic Code 5257 is not warranted. While the Veteran has surgical scars, the findings of record do not support a separate compensable rating. See 38 C.F.R. § 4.118 (2016). 

The Board has considered whether any other applicable rating criteria may enable a higher evaluation. However, after review, the Board finds that no other diagnostic code provides for a higher or separate rating. 

In conclusion, a 20 percent evaluation from February 1, 2008 to May 27, 2009 and from September 1, 2009 to July 25, 2012 for degenerative joint disease of the left knee is warranted. However, as the preponderance of the evidence is against an even higher rating during those time periods or at any other time during the rating period, those aspects of the claim must be denied. 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. 49.

Additional Considerations

The Board has considered whether the schedular evaluation is inadequate, thus requiring referral of the case to the Under Secretary for Benefits or Director of Compensation and Pension Service for consideration of an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability. 38 C.F.R. § 3.321(b)(1) (2016). 

An extra-schedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the disability. Thun v. Peake, 22 Vet. App. 111 (2008). 

If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Thun v. Peake, 22 Vet. App. 111 (2008). When either of those elements has been satisfied, the appeal must be referred for consideration of the assignment of an extra-schedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1) (2016); Thun v. Peake, 22 Vet. App. 111 (2008).

In this case, the schedular evaluations are adequate. Evaluations in excess of those assigned are provided for certain manifestations of the service-connected back and left knee disabilities, but the medical evidence reflects that those manifestations are not present in this case. The diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disabilities. The primary symptomatology of the thoracolumbar spine disability is pain and the resulting functional impairment, to include limitation of motion, which is contemplated by the schedular criteria. As his use of a back brace is for minimizing pain, it is reasonably contemplated by the rating criteria. The primary symptomatology of the left knee disability is also pain and the resulting functional impairment, to include limitation of motion, which is contemplated by the schedular criteria. His symptoms of weakness, giving way, fatigability, and incoordination are reasonably contemplated by the rating criteria. As the rating schedule is adequate to evaluate the disabilities, referral for extra-schedular consideration is not in order.


ORDER

An initial evaluation in excess of 10 percent prior to August 18, 2015 for a thoracolumbar spine disability is denied.

An evaluation of 40 percent from August 18, 2015 to February 11, 2016 for a thoracolumbar spine disability is granted, subject to the provisions governing the award of monetary benefits.

An evaluation in excess of 20 percent since February 12, 2016 for a thoracolumbar spine disability is denied.

An initial evaluation in excess of 10 percent prior to October 22, 2007 for degenerative joint disease of the left knee is denied. 

An evaluation of 20 percent from February 1, 2008 to May 27, 2009 and from September 1, 2009 to July 25, 2012 for degenerative joint disease of the left knee is granted, subject to the provisions governing the award of monetary benefits.

An evaluation in excess of 20 percent since July 26, 2012 for degenerative joint disease of the left knee is denied.


REMAND

A May 2016 rating decision granted service connection for lumbar radiculopathy of the left lower extremity and lumbar radiculopathy of the right lower extremity, with an effective date of August 18, 2015. In June 2016, the Veteran filed a timely notice of disagreement to the effective date of the awards. While the AOJ has acknowledged the Veteran's notice of disagreement, the Board is required to remand the issues regarding the effective dates for issuance of a statement of the case. Manlincon v. West, 12 Vet. App. 238 (1999). 

As to the remaining issue of entitlement to a TDIU, due process requires that the AOJ undertake certain notice obligations prior to the Board's adjudication of the issue.

Accordingly, the case is REMANDED for the following actions:

1. Issue a statement of the case on the issues of entitlement to an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the left lower extremity and an effective date earlier than August 18, 2015 for the award of service connection for lumbar radiculopathy of the right lower extremity. Advise the Veteran that a timely substantive appeal is necessary to perfect the appeal to the Board. If the appeal is perfected, then return the case to the Board.

2. Provide the Veteran with notice that is compliant with 38 U.S.C.A. § 5103(a) as to the issue of entitlement to a TDIU.

3. Then, adjudicate the raised issue of entitlement to a TDIU. If any decision remains adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
THOMAS H. O'SHAY 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs