Citation Nr: 1812662 
Decision Date: 02/28/18 Archive Date: 03/08/18

DOCKET NO. 12-14 352A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in 
Roanoke, Virginia


THE ISSUE

Entitlement to service connection for vision disability.


ATTORNEY FOR THE BOARD

Mary C. Suffoletta, Counsel 


INTRODUCTION

The Veteran served on active duty from January 1991 to January 1995.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision that, in pertinent part, denied service connection for bilateral vision loss. The Veteran timely appealed.

In December 2016 and in August 2017, the Board remanded the matter for additional development. The Board is satisfied there was substantial compliance with its remand orders. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998). 


FINDINGS OF FACT

1. A disability due to disease or injury manifested by impaired vision was not manifest during service and is not attributable to service.

2. The Veteran has astigmatism and myopia, refractive errors.


CONCLUSIONS OF LAW

1. A disability due to disease or injury manifested by impaired vision was not incurred or aggravated in service. 38 U.S.C. §§ 1110, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2017).

2. Astigmatism and myopia are not diseases or injuries within the meaning of the law providing compensation. 38 C.F.R. § 3.303 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

These duties have been satisfied in this appeal. There is no indication that any additional action is needed to comply with the duty to assist the Veteran. The RO or VA's Appeals Management Office (AMO) has obtained copies of the service treatment records and outpatient treatment records. VA arranged for a VA examination in connection with the claim on appeal, although the Veteran failed without good cause to report for that examination. There is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. The Veteran has not identified, and the record does not otherwise indicate, any existing pertinent evidence that has not been obtained. 

Given these facts, there is no further assistance that would be reasonably likely to assist the Veteran in substantiating the claim. 38 U.S.C. § 5103A(a)(2).

II. Analysis

As a preliminary matter, the Board notes that the Veteran filed an original compensation claim for VA benefits in March 2010, pursuant to which service connection for bilateral vision loss was denied by the RO in May 2010. Pursuant to 38 C.F.R. § 3.655(b), when a claimant fails to appear, without good cause justification, to a VA examination in conjunction with an original claim, the claim shall be rated based on the evidence of record. Accordingly, because the Veteran failed to report to his VA examination, and because this is an original claim for compensation, the claim is evaluated based on the evidence of record. See 38 C.F.R. § 3.655(b).

Service connection is awarded for disability that is the result of a disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131.

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

The Veteran seeks service connection for impaired vision, which he believes is due to long periods of time spent on a computer in low light conditions aboard a naval ship in active service. Specifically, he reports that his vision was 20/20 upon service entry, and was later 20/400. He is competent to report on factual matters of which he has first-hand knowledge. Washington v. Nicholson, 19 Vet. App. 362 (2005). 

Clinical evaluation at the time of the Veteran's enlistment examination in February 1990 reveals normal eyes. Records show that the Veteran passed an eye examination in January 1991. He reported a recent decrease in visual acuity at the November 1994 separation examination. The examiner noted that, for the right eye, the Veteran's distant vision was 20/100 and his near vision was 20/70; both distant vision and near vision for the left eye were 20/20. The examiner noted no prior history of trauma, and indicated that the decrease in visual acuity was not considered disabling.

In March 2010, the Veteran reported that his loss of vision acuity began in January 1991 in active service; and that he had no prior history of temporary or permanent vision loss. In April 2011, the Veteran reported being treated for bilateral vision loss at a VA facility.

VA records, dated in April 2011, show a chief complaint of blurred vision. The Veteran reported a history of problems with his visual acuity, which had gotten worse over the last year; and reported having difficulty seeing at night. The diagnosis in April 2011 was "blurred vision," and the Veteran was referred to an eye clinic. At the VA eye clinic in May 2011, the Veteran reported worsening vision in both eyes. He reported that his vision changed dramatically in the last five-to-seven years, and that he used to be "20/20" in both eyes until he was discharged from active service. He denied any injuries. His ocular history was negative for glaucoma, cataracts, or surgery. Examination of each eye, without correction, revealed visual acuity of 20/60 for the right eye and 20/25 for the left eye. 

Following examination in April 2011, the assessment was blurred vision secondary to myopia, astigmatism, in each eye; and good ocular health. Monitoring was to continue for six months, prior to ordering a full prescription for eyeglasses. VA records, dated in June 2012, show that the Veteran reported stable vision with glasses. Examination revealed that the Veteran's ocular health in each eye was stable, and that there was no change in the refractive error. 

In June 2012, the Veteran reported that his eyesight had decreased dramatically during the last 18 months of active service aboard ship. He reported that he worked nights and worked in a low light condition; he also spent most of his time in front of a computer screen. Since his separation from active service, he no longer used a computer in the dark; and had been employed in "blue collar-type jobs." 

Under 38 C.F.R. § 3.303(c), refractive error of the eye is not considered a disease or injury within the meaning of applicable legislation governing the awards of compensation benefits. As both astigmatism and myopia are refractive errors, these conditions are not "diseases" or "injuries" for purposes of service connection. See McNeely v. Principi, 3 Vet. App. 357, 364 (1992); Parker v. Derwinski, 1 Vet. App. 522 (1991); see also Dorland's Illustrated Medical Dictionary, 151, 1094 (28th Edition, 1994).

Here, the Veteran's impaired vision has been attributed to refractive error. Again, refractive error of the eye are not considered diseases or injuries for awards of VA compensation benefits. 38 C.F.R. § 3.303(c).

For purposes of service connection, the evidence, including the service separation examination, does not show that any eye disease was present in active service. While the Veteran contends that his impaired vision had its onset in active service, he is not shown to have the medical expertise to offer an opinion on such a complex medical question as to the nature of his underlying decreased visual acuity, or to identify that any eye disease is related to active service. In essence, the Board finds that the issue presented in the case is not one in which the Veteran's lay contentions can serve to support an award of service connection and there are no Jandreau type exceptions in this case. Here, the only pathology that has been identified is refractive error. Since there is no disease or injury, compensation may not be granted.

The Board concludes that the preponderance of the evidence is against granting service connection for impaired vision. On this matter, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for vision disability is denied.




____________________________________________
H. N. SCHWARTZ
 Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs